(No. 24417.)
JOHN BORRESON, Appellee, *vs.* THE DEPARTMENT OF PUBLIC WELFARE, Appellant.

*Opinion filed April 15, 1938.*

SHAW, J., specially concurring.
STONE, J., dissenting.

Otto Kerner, Attorney General, (Ivan J. Hutchens, State's Attorney, and A. B. Dennis, of counsel,) for appellant.

O. C. Smith, and Edward P. Saltiel, (Gore & Davies, of counsel,) for appellee.

Mr. Justice Wilson delivered the opinion of the court:

The defendant, the Department of Public Welfare of the State of Illinois, prosecutes this appeal from an order of the circuit court of Macon county finding that the plaintiff, John Borreson, was entitled to an award under "An act in relation to the care and assistance of aged persons and providing for their burial," approved June 29, 1935, as amended, (Ill. Rev. Stat. 1937, chap. 23, par. 410, p. 316,) and commanding the director of the department and the superintendent of its Old Age Assistance Division to pay plaintiff $24 per month, on the first day of each month, commencing August 1, 1937.

Plaintiff made application for assistance to the county department of public welfare on the form prescribed by defendant pursuant to the statute. The county department, after due investigation, awarded plaintiff the sum of $20 per month and forwarded his application with the report of its action to the defendant, as required by the act. Defendant ruled that plaintiff was not entitled to any award and rejected his application for assistance. Plaintiff thereupon petitioned the circuit court of Macon county for a trial de novo on his application, as provided by section 10 of the act. Evidence was heard and the court entered the challenged order.

To obtain a reversal defendant makes the contention, among others, that the provision of section 10 of the Old Age Assistance act for a trial de novo in the circuit court is an attempt to authorize a branch of the judicial depart-

ment to exercise functions of the executive department of the State and therefore transcends the third article of our constitution. A review of the relevant provisions of the statute becomes necessary to determine the constitutional issue.

Section 2 of the Old Age Assistance act declares that assistance shall be given to any person who has attained the age of sixty-five years; resided in Illinois for a specific period of time immediately preceding the filing of his application; is a citizen of the United States; is not an inmate of or being maintained by any municipal, county, State or national institution; has not made a voluntary or involuntary assignment or transfer of property for the purpose of qualifying for assistance; has not sufficient income to provide a reasonable subsistence compatible with decency and health, provided such reasonable subsistence shall not exceed $30 per month; has no children who, in the opinion of the Department of Public Welfare or of the Attorney General, are legally responsible for his support; has children who, individually or collectively, are reasonably able to support him, and who can be legally compelled so to do, but only during the period that such children do not actually support him (section $12\frac{1}{2}$ provides for the recovery of the amount granted as assistance to the recipient from such child or children in a civil action;) and, if an inmate of or being maintained by a private institution, has not purchased care and maintenance either by cash or transfer of property, in such institution, or having purchased such care and maintenance, shall be eligible for assistance only when and after the amount of such cash or property has been wholly consumed for his care and maintenance. Section $2\frac{1}{4}$ prescribes methods for proof of age. The third section specifies that the amount of assistance to which any person is entitled shall, "subject to the regulations of the State department," be fixed with due regard to the amount of property owned and income received or obtainable by the applicant and other

conditions existing in each case, and shall be sufficient when added to all other income and support of the recipient to provide him with a reasonable subsistence compatible with decency and health. In no case, section 3 commands, shall the assistance given to any person when added to all other income and support of the recipient exceed the rate of $30 per calendar month. A grant of assistance to a qualified aged individual, it is further provided, shall not exceed the rate of $15 per month for any month unless the State receives matching contributions from the Federal government. Section 5 provides that the county departments, namely, the Bureau of Public Welfare in counties of 500,000 or more inhabitants and the county or district departments of public welfare in counties of less than 500,000, shall administer the act in their respective counties in accordance with the rules and regulations prescribed by the State department pursuant to the provisions of the statute. Section 6 deals with the general administration of the statute, directing the State department, (1) to formulate rules and regulations and take such action as may be necessary or desirable for carrying out the provisions of the act to the end that its spirit and purpose may be achieved and that old age assistance may be administered efficiently throughout the State; (2) to prescribe the form of, and print and supply to the county departments official blanks for applications, reports, affidavits and such other forms as are deemed advisable, and (3) to co-operate with the Federal Social Security Board, created under title 7 of the Social Security act, "in any reasonable manner not contrary to this act, as may be necessary to qualify for Federal aid for assistance to the aged." Section 7½ directs that each application for assistance shall be filed originally in the county where the applicant resides. This section describes the character of information to be contained in such petition and directs the county department, upon the receipt of such application, to promptly make the necessary investigation as prescribed by the rules and

regulations of the State department. "The object of such investigation," it is declared, "shall be to determine whether the applicant is entitled to assistance under this act, and said county department shall furnish to the State department all information which may be required by its rules." Under section 9 the county department, upon the completion of its investigation, is authorized to decide, in the first instance, whether the applicant is eligible for assistance and the amount of such aid. By section 10 the county department is required to report immediately to the State department its decision in each case where it recommends that an award be made, and to transmit its files concerning the applicant together with all papers and documents pertaining to his case. The applicant, if denied assistance, or if he deems the grant inadequate, may, within sixty days after such decision, appeal to the State department for a review. This section also provides that the State department in reviewing decisions may make such additional investigation as it deems necessary, and shall make such decision as to the granting of assistance, and if any granted, the amount thereof, as in its opinion is justified and in conformity with the statute.

The third paragraph of section 10, which defendant assails, is as follows: "The applicant may, within forty (40) days after notice of the decision rendered by the State department, apply to the circuit court of the county wherein the applicant resides, for a trial *de novo,* without cost to the petitioner, by a petition upon forms provided and prescribed by the State department. A copy of the petition shall be served, either in person or by mail, upon the State department within twenty (20) days after the filing of said petition. Service upon the director or assistant director or any other person in charge of the office shall be service upon the department. All decisions rendered by the circuit court may be appealed under the same terms and conditions as are now, or may hereafter be, provided by law."

Section 11 authorizes the consideration of assistance grants as frequently as may be required by the rules of the State department. Following such further investigation as the county department may deem necessary or the State department requires, the amount and manner of rendering assistance may be changed or assistance entirely withdrawn if either the county or State department finds that the recipient's circumstances have altered sufficiently to warrant such action. The county department may also at any time cancel and revoke assistance for cause, and it may for cause suspend assistance for such period as it may deem proper. All such decisions withdrawing, revoking, suspending or in any manner changing assistance shall be subject to approval and review by the State department as provided in section 10. The fourteenth section provides that if the recipient or applicant is found incapable of taking care of himself or his money, the county department may direct the payment of the instalments of the award to some responsible person for his benefit.

The precise question presented for decision is whether the third paragraph of section 10 delegates executive power to the judiciary. The provision of article 3 of our constitution with respect to the separation of powers is declaratory of one of the basic principles of our State government. Each of the three departments is to perform the duties assigned to it and no department may exercise the powers properly belonging to either of the other two. (*Parks* v. *Libby-Owens-Ford Glass Co.* 360 Ill. 130; *Saxby* v. *Sonnemann,* 318 id. 600; *McQuade* v. *City of Joliet,* 293 id. 515; *City of Aurora* v. *Schoeberlein,* 230 id. 496.) In the present case no discretion has been granted as to what the law shall be but the legislature, in its wisdom, has conferred an authority or discretion upon administrative agencies as to the execution of the Old Age Assistance act, to be exercised under and conformably to the law itself. The powers and duties devolving upon the department are executive or min-

isterial. Obviously, such powers cannot be delegated to the judicial department of the government. By the provision for a trial *de novo* in the circuit court coordinate powers and duties, however, devolve upon the courts. A consideration of the nature of the functions of the department is, accordingly, necessary to ascertain the character of the power granted to and the duties imposed upon the circuit courts.

The Old Age Assistance act itself discloses the manifest intent of the legislature to grant broad discretion to a competent expert administrative agency with respect to the execution of the statute and the establishment of policies in harmony with its spirit. One of the salutary purposes of the law is to furnish qualified needy persons a reasonable subsistence compatible with decency and health. To accomplish this objective, the Department of Public Welfare has been vested with discretion to decide the varied problems attending the determination, first, of the eligibility of an applicant for assistance, and, secondly, the actual amount of aid to be granted and the method of its payment. A decision of the initial question of the eligibility of the recipient is dependent, in part, on whether the applicant lacks sufficient income to provide a reasonable subsistence compatible with decency and health and has no children who, "in the opinion," of the State department or the Attorney General, are legally responsible for his support. These and similar standards of eligibility to the benefits of the statute involve the exercise of judgment and discretion. Whether a particular individual is needy, within the contemplation of the statute, is a question to which a categorical affirmative or negative answer is rarely possible. The exercise of discretion is essential in fixing the exact amount of assistance to be awarded to eligible applicants. Manifestly, the administration of the ameliorative program of assistance to the aged involves something more than the payment of a specified sum of money to particular individuals.

Other provisions of the Old Age Assistance act confirm our opinion that the execution of this State's program for assistance to the aged is essentially an executive function. By section 11 the Department of Public Welfare is authorized to reconsider and change all grants of assistance at any time, and to cancel or change awards if circumstances are changed. Whether assistance should be granted, modified, or denied, presents no question of law or fact for judicial determination. In *City of Galesburg* v. *Hawkinson*, 75 Ill. 152, this court said: "It is of the essence of a judicial determination that it shall, so long as unreversed, and not vacated, be conclusive as to the matters involved in the controversy." Here, however, the department might, after the entry of the order assailed, have changed the resultant award pursuant to section 11. The mere statement of the proposition that an order of the circuit court granting assistance to a needy aged person could be modified or annulled by an administrative department or ministerial agency carries its own refutation. The impermanent character of the orders of the circuit court under section 10 is a circumstance fortifying the conclusion that the function to be exercised by the Department of Public Welfare and the circuit courts is not judicial in its nature. If the grants of assistance can be altered and changed at the discretion of an administrative agency,—and the law is explicit in this respect,—the provision for a trial *de novo* in the circuit court is a plain delegation of executive power to the courts.

The power of the circuit court, upon a trial *de novo,* is not limited to a mere review of administrative action by the department but the court may independently determine issues of fact or conduct and substitute its own judgment and discretion for the judgment of a ministerial body. In particular, the circuit court may reexamine and redetermine the questions of an aggrieved applicant's eligibility for assistance and the amount of assistance to which he is entitled. Admittedly, the administration of the law is not a proper

function of the judicial department. Since the courts are authorized to exercise the same power concurrently with the Department of Public Welfare in the administration of the Old Age Assistance act, the conclusion is inescapable that the third paragraph of section 10 is a grant of executive power to a branch of the judicial department of government. It is important that attempts of other departments to invade the province of the judiciary be repelled. Likewise, it is essential that the courts decline to assume executive power conferred by the legislature.

The Supreme Court of New Hampshire has recently had occasion to construe a bill entitled "An act providing for assistance to the aged," similar to the Illinois Old Age Assistance law. (*In re Opinion of the Justices,* 85 N. H. 562, 154 Atl. 217.) The proposed act set up the administration of the system it established in the probate courts. Probate judges were required to decide upon all applications, investigate them when deemed necessary, give hearings thereon, and make a special inquiry when probable cause of improper assistance existed. The judges were further directed to issue rules and regulations for the enforcement of the act and to keep the public informed with respect to the workings of the system. Orders for payment of assistance were to be given by them. They were authorized to seek the advice and assistance of the Attorney General or county solicitor. The Supreme Court of the State, in holding the bill unconstitutional as assigning executive functions to the courts, said: "It erects a structure in the well-known form of a governmental agency usually designated as a commission. Its functions are administrative. To be sure, many things to be done call for the exercise and passing of judgment, and the law ordinarily regards such things as judicial acts. But the judicial character of acts does not test the department of government to which they are assignable. While the line of division between the departments may be difficult to draw with precision and accuracy,

there is no difficulty here in assigning the bill as giving authority clearly belonging to the executive branch. Speaking broadly but definitely enough for present purposes, the judicial department is confined to courts of justice established to interpret laws and decide disputes. * * * The executive department is the active agency to carry laws into effect and enforce them. The commission set up by the bill unquestionably belongs to it. Administration of a law is placed under its charge and committed to it. The bill proposes that a court of justice shall be a branch of the executive department of the State government, in respect to its subject matter. * * * The judicial department can require no power to administer laws relating to pauperism to make its purposes effective, and such laws cannot require administration by the courts to give pauperism efficient treatment. The subject must be classed as one for executive dealing, and is not within any uncertainties of borderland boundaries."

The subject matter of the Illinois Old Age Assistance law also demands executive dealing and administration. Throughout the history of this State the distribution of funds allocated by the legislative branch of our government for aid to indigent and needy persons has been considered a matter peculiarly appropriate to the exercise of executive power. To the extent that the statute provides for a trial *de novo* the execution of the Old Age Assistance act is placed in charge of the circuit courts. The third paragraph of section 10 of the act, and our opinion is specifically limited thereto, is invalid because it is an unconstitutional delegation of executive power to a branch of the judicial department.

The order of the circuit court is reversed.

*Order reversed.*

Mr. JUSTICE SHAW, specially concurring: I agree with the result reached in the majority opinion but not with all the reasoning by which the result is reached.

Mr. JUSTICE STONE, dissenting:

I do not concur in the conclusion reached in the majority opinion. It can no more be said that the act attempts to confer ministerial or executive duties upon the circuit court than does the Workmen's Compensation act under which the matters of compensation are first determined by a non-judicial board. The fact that the hearing is said to be *de novo* in nowise renders this act different, in this particular, from the Workmen's Compensation act. Under the latter act the circuit court, on *certiorari,* may hear additional evidence. The clearly expressed purpose, and the only purpose, of the provision of section 10, which the majority opinion holds to be invalid, is to review the action of the Department of Public Welfare. No action may be had in the circuit court until that department has acted. It cannot be doubted that *mandamus* would lie to compel, in a proper case, the granting of this relief, yet the exercise of jurisdiction of the court under this act is no more an executive or ministerial function than *mandamus* would be. It was evidently the purpose of the legislature to prevent the application for assistance by old and needy citizens becoming a matter of the arbitrary whim of the Department of Public Welfare or the imposition of political pressure upon applicants. I know of no other case where the courts have been declared closed in such a matter.

I am further of the opinion that the language of the act itself clearly demonstrates that the General Assembly would not have enacted this legislation without providing an opportunity for appeal to the courts, and, this being so, it follows under undoubted and undisputed rules of law, that the invalidity of the provision of section 10, here attacked, renders the entire act invalid. Yet that is not the holding of the majority opinion.