JUSTICE BARRY
 

 delivered the opinion of the court:
 

 This appeal involves 1979 property tax objections filed by certain taxpayers challenging the validity of township multipliers adopted by the Mercer County Board of Review. These objections were first disposed of by an agreed order, but after the trial court allowed a motion by the State’s Attorney to vacate that order, a hearing was held, and the court ruled that the multipliers were invalid. The State has appealed from that ruling.
 

 , We believe the determinative issue in this case is whether the trial court properly vacated the order which had been entered upon agreement of the parties. In order to understand that issue, however, it is necessary to set forth the events which led to the filing of tax objections in the first place.
 

 On August 8, 1979, all individual property assessments for Mercer County were published as is statutorily required for each quadrennial assessment year. The publication notice stated that the published valuations were subject to equalization by the State of Illinois and to revision by the Mercer County Board of Review. In mid-October of 1979 the county supervisor of assessments, Earl Kissler, received a notification from the State that a tentative county-wide multiplier of 1.4860 had been proposed for Mercer County for 1979. In order to forestall adoption of this county-wide multiplier, the board of review proceeded to compute township multipliers. (In May of 1980 the Department of Revenue certified a multiplier of 1.0554 for Mercer County for the year 1979.)
 

 The board of review during late October of 1979 published notices of the proposed township multipliers and of hearings where taxpayers would have an opportunity to voice objections. According to the record on appeal, at least 300 taxpayers attended one of those hearings. After the hearings were held, the board of review met on November 30, 1979, and adopted the multipliers as proposed. The action of the board establishing township multipliers was subsequently published on December 26 and 27, 1979, but the resulting upward revisions of the assessed valuation of each individual parcel of property were not published.
 

 Sixty-nine persons filed objections to taxes in the cause filed by the county collector to collect delinquent taxes. Those objections sought refunds of real property taxes previously paid under protest and included allegations of several errors by taxing officials. Stated briefly, those objections asserted that each dwelling was assessed without regard to factors that would depreciate its value, that each parcel was assessed at a higher percentage of fair cash value than other property, that no notice of change in assessment had been mailed to objectors, that the publication of the quadrennial assessment was misleading and failed to inform them of the level of assessment or of the possibility that the board of review would attempt to equalize the assessments, that the publication of the board of review’s notice of proposed increase in assessment was misleading, and that the method and procedures used to arrive at assessed values as listed on objectors’ tax bills were illegal. Some objectors also claimed, inter alia, that their real property was being taxed doubly, that lesser grades of land had been arbitrarily valued by use of a percentage increase rather than on productivity, that Mercer County assessments were excessive as compared to other counties, that the persons performing assessments were not qualified, that the multipliers were not uniform among townships, were illegally applied, and that tax bills failed to reflect assessed values before application of multipliers.
 

 These objections were filed dining October of 1980, and on November 26, 1980, a “Compromise Agreement” was entered into between counsel for the objectors and the Mercer County State’s Attorney, John D. Sloan. According to testimony adduced at subsequent hearings, Sloan did not notify the county collector or the treasurer of any other taxing units that he was involved in negotiations with the tax objectors, although he did ask the county supervisor of assessments for information concerning board of review actions.
 

 The compromise agreement stated that it was agreed that the county-wide multiplier on farm land be declared null and void and that a refund be awarded representing the difference between the actual tax paid and the corrected tax based upon the assessed valuation times the applicable tax rate. The agreement further stated that each parcel of nonfarm land was valued by methods that were illegal and “contrary to the provisions of Chapter 120, par. 589.1, Illinois Revised Statutes” which requires analysis of 25 property transfers or appraisals when determining a multiplier and which further limits the increase in the aggregate assessment for a township to 25% in one year. It was agreed that all nonfarm landowners were entitled to a refund of those taxes representing the difference between the actual taxes paid and the amount that should have been paid upon the listed assessed value times the State multiplier, less any exemption, times the tax rate. Attached to the agreement were exhibits setting forth the computations of refund in accordance with the formulae agreed to by the parties. Circuit Judge Jay Hanson entered an order approving the compromise agreement and directing the county collector to pay to each objecting taxpayer the amount of refund shown on the exhibits. These exhibits had been prepared by the taxpayers and submitted to the State’s Attorney for his approval.
 

 John Sloan’s term of office as State’s Attorney ended on December 1, 1980, and David Zwicker then assumed that office. The county board of supervisors met December 2 and requested the new State’s Attorney to see if the compromise agreement could be vacated, and thereafter the State’s Attorney filed the motion to vacate the compromise agreement and order, requesting the court to grant a rehearing and to grant leave for all Mercer County tax levying units to intervene. The motion to vacate asserted errors in the calculation of refunds, stated that section 108a of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 589.1) did not take effect until January 1, 1980, and asserted numerous other errors of law and fact.
 

 After an extensive hearing on the- motion, Judge Hanson entered an order vacating the compromise agreement and ordering a hearing on the objections. The court based its ruling upon the fact that the a'greement was entered into by State’s Attorney Sloan without notice to or consent of county officials or other taxing bodies involved. In its written opinion, the trial court stated that the State’s Attorney has an attorney-client relationship with the county board and that an absence of notice to the county officials “smacks of simple lack of due process and fairness.” The court did not consider the other issues raised in the motion to vacate.
 

 Subsequently a hearing on the objections was held before Judge David DeDoncker and an order was entered invalidating the township multipliers and directing that tax refunds be computed using the assessed valuations as originally published on August 8, 1979, to which should be applied the State multiplier and any exemptions.
 

 The State has appealed from Judge DeDoncker’s order, claiming that the township multipliers were adopted in conformity with statutory requirements and should have been upheld. As indicated above, we do not reach that question because we have concluded that Judge Hanson erred in vacating the compromise agreement and order; thus, eliminating the need for a hearing before Judge DeDoncker.
 

 In his opinion deciding that the agreement should be vacated, Judge Hanson, in addition to expressly finding that the State’s Attorney has an attorney-client relationship with the county board, found that the statutory authority to enter into compromise agreements “necessarily implies the consent of those people he represents as an attorney, including all of the people of Mercer County, but specifically the County Board and other county officials who would have the burden of carrying out the agreement. ***. Even if not technically required, such a total absence of notice to the County officials involved, when they were opposed to such action, or to other taxing bodies when they may be involved, smacks of simple lack of due process and fairness.” We do not agree.
 

 Section 194 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 675) sets forth the procedure for objecting to taxes, and contains the requirements for notices, as follows:
 

 “The county clerk shall, within 30 days from the last day for the filing of objections, notify the duly elected or appointed custodian of funds for each tax levying unit, whose tax monies may be affected by such objection, that such objection has been filed. *** The State’s Attorney shall also notify such custodian and the county clerk in writing of the date, time and place of any hearing before the court to be held upon such objection or amended objection not later than 4 days prior to the hearing thereon.”
 

 The State’s Attorney’s authority to compromise tax objections is contained in section 194a of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 675a):
 

 “Upon the filing of an objection under Section 194 ***, the court must, unless the matter has been sooner disposed of, within 90 days after such filing hold a conference between the objector * * * and the State’s Attorney. If no agreement is reached at the conference, the court must, upon the demand of either the taxpayer or the State’s Attorney, set the matter for hearing within 90 days of the demand. Compromise agreements on tax objections reached by conference between the objector *** and the State’s Attorney shall be filed with the court, and the State’s Attorney shall prepare an order covering the settlement and file same with the clerk of the court within 15 days following said conference.”
 

 From these provisions, it seems clear that the State’s Attorney has authority to negotiate and enter into compromise agreements with objectors in order to dispose of tax objections by settlement. Compromise agreements do not require formal hearings before the court, but rather culminate in an order being entered. Only where a compromise is not reached and a hearing is held must the State’s Attorney give a notice of the hearing to the custodians of all the taxing units involved. In the case at bar, State’s Attorney John Sloan did not omit any statutory requirements when he negotiated the compromise agreement and arranged for entry of an order incorporating the agreement without prior notice to any county officials or officials of other taxing units. In the absence of a hearing, no notice was required.
 

 Parenthetically, we would observe that it might have been better practice for the State’s Attorney to inform the concerned public officials of the proposed settlement, but it would be unrealistic to require the officers of all affected taxing units to agree or consent to a compromise worked out by the State’s Attorney. It was, we think, for the purpose of expediting the disposition of tax objections that the legislature did not require notice in advance of compromise agreements.
 

 The duties of the State’s Attorney are specified by statute to include the duty “[t]o commence and prosecute all actions and proceedings brought by any county officer in his official capacity.” (Ill. Rev. Stat. 1981, ch. 14, par. 5(3).) This cause is an application for judgment brought by the county collector, and pursuant to the above-quoted statute, it was the duty of the State’s Attorney to commence and prosecute this action. A similar provision is contained in the statute defining the statutory duties of the Attorney General of the State. In section 4 of “An Act in regard to attorneys general and state’s attorneys” (Ill. Rev. Stat. 1981, ch. 14, par. 4), the duties of the Attorney General include “[t]o institute and prosecute all actions and proceedings in favor of or for the use of the state, which may be necessary in the execution of the duties of any state officer.”
 

 The Attorney General has been held to be the chief legal officer of the State with the duty of acting as legal adviser to and legal representative of State agencies and officers. In Environmental Protection Agency v. Pollution Control Board (1977), 69 Ill. 2d 394, 372 N.E.2d 50, the Illinois Supreme Court said:
 

 “It seems to us that if the Attorney General is to have the unqualified role of chief legal officer of the State, he or she must be able to direct the legal affairs of the State and its agencies. Only in this way will the Attorney General properly serve the State and the public interest.” (69 Ill. 2d 394, 401-02, 372 N.E.2d 50, 53.)
 

 The court concluded that the Attorney General could properly represent two State agencies even though they were opposing parties because only in that way can he or she serve the broader interests of the State. See also People ex rel. Scott v. Briceland (1976), 65 Ill. 2d 485, 359 N.E.2d 149.
 

 Our courts have held that the State’s Attorney is a part of the executive branch of government vested with the discretionary powers of an executive officer (People v. Stinger (1974), 22 Ill. App. 3d 371, 317 N.E.2d 340), and it has been said, “The sanctity of prosecutorial discretion should not be cavalierly discarded.” (People v. Thompson (1980), 88 Ill. App. 3d 375, 379, 410 N.E.2d 600, 603.) We believe that the executive powers of the State’s Attorney as the legal representative of county government correspond to those of the Attorney General as the chief legal officer of the State. (See Ashton v. Cook County (1943), 384 Ill. 287, 51 N.E.2d 101.) In an action like the one before us, where multiple units of government have an interest in the outcome and where the county collector is the petitioning party, the public interest is best served by recognizing the authority of the State’s Attorney to control this litigation on behalf of the collector, and all other taxing bodies affected. In other words, this was not an ordinary attorney-client situation, and the county board was not the “client” in any event. The State’s Attorney as an elected public official had a duty to conduct this litigation and had express authority to enter into a compromise agreement without the approval of any of the taxing units that might ultimately be affected. To the extent the trial court ruled to the contrary, that ruling was erroneous.
 

 We also believe the trial court overlooked the contractual nature of the agreement between the State’s Attorney and the objectors. The general rule has been stated as follows: “Once the parties have entered into an agreement settling a disputed claim, neither party will, in the absence of any element of fraud or bad faith, be permitted to repudiate it.” (15A Am. Jur. 2d Compromise & Settlement sec. 7 (1976).) This rule would bar the State’s Attorney (both Sloan and his successor) from seeking to vacate the agreement on the grounds that a better result should have been reached, or for any other reason short of fraud or bad faith. As we have indicated above, the tax objections filed in this cause contained numerous allegations of errors and illegalities. They were, in effect, overruled as a part of the compromise. Interestingly, after a full hearing on the objections before Judge DeDoncker, the court reached virtually the same result as was attained in the compromise agreement. Thus, with the advantage of hindsight, we can see that the compromise was reasonable.
 

 During the hearing before Judge Hanson on the motion to vacate, a witness (who is now the supervisor of assessments for Mercer County) testified on behalf of the taxpayers that she did the computations of refunds for the order that was entered on the compromise agreement, and she admitted that she erroneously applied the “owner occupied exemption” in several instances because she lacked the correct figures for the previous year’s assessment. That exemption should be applied only when the assessed valuation increases from one year to the next. By eliminating the township multiplier, the increases were also eliminated. Since neither side disputes that an error was made in the computation of refund, this would be an appropriate case for the court to permit a reformation of the compromise agreement so as to comply with the reasonable expectations of the parties. (See 15A Am. Jur. 2d Compromise & Settlement sec. 43 (1976).) We accordingly hold that this cause should be remanded with directions to recompute the refunds provided in the compromise order by eliminating the wrongfully applied exemptions.
 

 The objectors have also cross-appealed from an order entered by Judge Michael Brinn on October 27, 1981, which denied reimbursement of a $10 filing fee charged by the circuit clerk against 68 of the tax objectors. The objectors contend that only one filing fee should be charged for all 69 objectors where the same allegations are contained in the pleadings filed. The statute provides that a $10 fee shall be charged “[flor each paper containing one or more tax objections, and filed by a taxpayer ***.” (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 25, par. 27.1(m).) This statute had previously required a $10 filing fee for “each tax bill objected to” but was amended by Public Act 81 — 331, effective August 30, 1979, for the express purpose of preventing an entire subdivision from joining in one tax proceedings while paying only one filing fee. We take judicial notice of the fact that each tax bill will have to be recomputed, that separate refund checks will have to be prepared for each taxpayer, and other processing corrections made. The paperwork involved in processing tax objections fully justifies the imposition of a separate filing fee of $10 for each taxpayer. We affirm Judge Brinn’s order.
 

 We do not reach the other issues argued on appeal since they relate to Judge DeDoncker’s rulings after the motion to vacate was granted by Judge Hanson.
 

 For the reasons indicated, we reverse the May 7, 1981, order of the circuit court of Mercer County that vacated the compromise agreement and the order of July 21, 1982, in favor of the tax objectors after the hearing on the merits.
 

 We affirm the order denying a refund of filing fees. We reinstate the order approving the compromise agreement and remand this cause for recomputation of tax refunds in accordance with this opinion.
 

 Reversed in part; affirmed in part; and remanded with directions.
 

 ALLOY and HEIPLE, JJ., concur.