(No. 82965.—

THE PEOPLE *ex rel.* RICHARD A. DEVINE, State's Attorney of Cook County, *et al.*, Petitioners, v. THE HONORABLE MICHAEL J. MURPHY, Judge of the Circuit Court of Cook County, *et al.*, Respondents.

*Opinion filed March 19, 1998.*

MILLER, J., joined by HEIPLE and NICKELS, JJ., dissenting.

Richard A. Devine, State's Attorney, of Chicago (Patricia M. Shymanski, Harry L. Brice, Whitney T. Carlisle, Randolph T. Kemmer and Dean M. Victor, Assistant State's Attorneys, and Mark R. Davis, Special Assistant State's Attorney, of counsel), for petitioners.

Lisa A. Hausten, of Sidley & Austin, of Chicago, for intervenor-petitioner CPC International Inc./Corn Products.

McCracken, Walsh, de LaVan & Hetler, of Chicago (Thomas J. McCracken, Sr., Thomas J. McCracken, Jr., and Thomas G. Moffitt, of counsel), for intervenor-petitioner Al London.

Leonard W. Golan (Patrick C. Doody and Gregory J. Lafakis, of Doody & Lafakis, Ltd., of counsel), all of Chicago, for intervenor-petitioner Lurie Co.

John J. Duffy, of Bates, Meckler, Bulger & Tilson, of Chicago (Thomas J. O'Brien, of counsel), for respondents.

Thomas J. McNulty and David S. Martin, of Keck, Mahin & Cate, and Theodore M. Swain, of Gould & Rat-

ner, all of Chicago (Dennis Rendelman, of Springfield, and Steven Pflaum, of counsel), for *amici curiae* Civic Federation *et al.*

JUSTICE McMORROW delivered the opinion of the court:

The primary issue presented in this original action for a writ of *mandamus* is whether section 23—15 of the Property Tax Code (35 ILCS 200/23—15 (West 1996)), violates the separation of powers provision of the Illinois Constitution (Ill. Const. 1970, art. II, § 1). For the reasons which follow, we hold that it does not.

## BACKGROUND

In 1995, the General Assembly enacted a comprehensive revision of the tax objection provision of the Illinois Property Tax Code, section 23—15. See 35 ILCS 200/ 23—15 (West 1996). The principal modification of prior law made by the revision of section 23—15 was the abolition of the judicially created doctrine known as constructive fraud. Under this doctrine, courts had been prevented from granting direct relief from excessive property tax assessments unless the assessments were shown to be actually or constructively fraudulent. See generally A. Ganz & D. Laswell, *Review of Real Estate Assessments—Cook County (Chicago) v. Remainder of Illinois*, 11 J. Marshall J. of Prac. & Proc. 17, 37-60 (1977) (reviewing the history of the doctrine of constructive fraud).

Section 23—15 replaced the doctrine of constructive fraud with a new statutory mechanism which permits objections to property tax assessments to be addressed directly in the circuit court. The assessments which the court considers are those which have been reviewed and corrected by the board of appeals or review. Under section 23—15, the tax assessment adopted by the boards is presumed to be correct and legal. However, this

presumption may be rebutted by clear and convincing evidence. The court is to hear the objection to the property tax assessment *de novo* and determine whether the assessment is incorrect or illegal. See 35 ILCS 200/23—15(b)(2), (b)(3) (West 1996). At the same time that the General Assembly revised section 23—15, it also made minor revisions to section 23—30 of the Property Tax Code. Section 23—30 authorizes the State's Attorney to reach settlement agreements in tax objection cases. See 35 ILCS 200/23—30 (West 1996).

On February 6, 1997, Judge Michael J. Murphy *sua sponte* issued a memorandum opinion in *In re* Application of Rosewell v. CPC International Inc./Corn Products, Nos. 91—1197, 92—2448, 93—3539, 94—4093, 95—1143 cons. (Cir. Ct. Cook Co.), in which he declared section 23—15 unconstitutional. In the memorandum opinion, Judge Murphy noted that the assessment of property taxes is a matter committed to the legislature and not the courts. Citing to several cases involving the doctrine of constructive fraud, Judge Murphy concluded that under separation of powers principles, the courts, in the absence of fraud or constructive fraud, have no power to directly review property tax assessments. Accordingly, Judge Murphy held that the legislature's attempt to abolish the doctrine of constructive fraud violated the separation of powers provision of the Illinois Constitution (Ill. Const. 1970, art. II, § 1).

In addition to ruling that section 23—15 was unconstitutional, Judge Murphy also indicated in the memorandum opinion that he would not sign a settlement order which had been negotiated pursuant to section 23—30. Judge Murphy stated that, because he had ruled section 23—15 unconstitutional, he could not sign the settlement order absent some showing that the assessment to be affected by the order was the product of fraud or constructive fraud. Signing and approving a settle-

ment order which did not establish fraud or constructive fraud, Judge Murphy explained, would require the judge to exceed the proper scope of judicial review and would violate the separation of powers doctrine.

Following the issuance of Judge Murphy's memorandum opinion, several additional orders declaring section 23—15 unconstitutional were entered in the circuit court of Cook County. In two property tax objection cases which were being tried under section 23—15, Judge Murphy repeated his ruling that section 23—15 was unconstitutional and, consequently, declared mistrials. In a third case, Judge Murphy refused to enter a settlement order which had been negotiated pursuant to section 23—30. In a separate case, Judge Curtis Heaton also refused to enter a settlement order which had been negotiated under section 23—30. In addition, Presiding Judge Francis Barth and Judge Murphy issued a public notice which provided, in part, that pending resolution of the constitutionality of section 23—15, "All regularly scheduled Calendar Calls, Scheduling Calls, Trial Management Calls, Trial Assignment Calls, and Trials in Tax Objection Cases are immediately suspended until further notice."

As a result of the orders entered in the circuit court declaring section 23—15 unconstitutional, petitioner, Richard A. Devine, State's Attorney of Cook County, filed a motion in this court seeking leave to file a petition for a writ of *mandamus*. We granted the motion. The petition for writ of *mandamus* requests this court to order the respondent judges of the circuit court of Cook County to (1) vacate their orders holding unconstitutional section 23—15; (2) vacate their orders refusing settlements in tax objection cases based on the unconstitutionality of section 23—15 and to approve such settlements where the State's Attorney has negotiated in good faith and has adequately represented the public interest

in reaching the settlements; and (3) withdraw the public notice issued by Presiding Judge Barth and Judge Murphy suspending all tax objection cases.

We granted leave to several property tax objectors to join in the petition for *mandamus*. We also allowed the Civic Federation, the Taxpayers' Federation of Illinois, the Chicago Bar Association, and the Illinois State Bar Association to file a joint *amici curiae* brief in support of petitioners. 155 Ill. 2d R. 345(a).

## ANALYSIS

### I

Statutes are presumed constitutional and the party challenging the validity of a statute has the burden of clearly establishing that it is unconstitutional. *People v. Inghram*, 118 Ill. 2d 140, 146 (1987). " '[I]t is our duty to construe acts of the legislature so as to uphold their constitutionality and validity if it can reasonably be done, and, further, that if their construction is doubtful, the doubt will be resolved in favor of the validity of the law attacked.' [Citations.]" *Inghram*, 118 Ill. 2d at 146.

Section 23—15 provides, in relevant part:

"(2) The taxes, assessments, and levies that are the subject of the objection shall be presumed correct and legal, but the presumption is rebuttable. The plaintiff has the burden of proving any contested matter of fact by clear and convincing evidence.

(3) Objections to assessments shall be heard de novo by the court. The court shall grant relief in the cases in which the objector meets the burden of proof under this Section and shows an assessment to be incorrect or illegal. If an objection is made claiming incorrect valuation, the court shall consider the objection without regard to the correctness of any practice, procedure, or method of valuation followed by the assessor, board of appeals, or board of review in making or reviewing the assessment, and without regard to the intent or motivation of any assessing official. The doctrine known as constructive fraud is

hereby abolished for purposes of all challenges to taxes, assessments, or levies." 35 ILCS 200/23—15(b)(2), (b)(3) (West 1996).

Respondents maintain that section 23—15 violates the separation of powers provision of the Illinois Constitution. In support of this proposition, respondents cite to numerous decisions of this court discussing the doctrine of constructive fraud and the role of the judiciary in reviewing property tax assessments. See, *e.g.*, *In re Application of the County Treasurer*, 131 Ill. 2d 541 (1989); *La Salle National Bank v. County of Cook*, 57 Ill. 2d 318 (1974); *People ex rel. Munson v. Morningside Heights, Inc.*, 45 Ill. 2d 338 (1970); *Spencer & Gardner v. People*, 68 Ill. 510 (1873). Respondents contend that these cases stand for the proposition that the separation of powers provision limits the standard of judicial review of property tax assessments solely to fraud and constructive fraud. We disagree.

Prior to the enactment of section 23—15, direct judicial review of property tax assessments was not provided for by statute. In the absence of a statutory remedy, the only authority which the courts could exercise to provide direct relief for tax objectors was the courts' inherent, equitable authority to correct a fraud. See, *e.g.*, *White v. Board of Appeals*, 45 Ill. 2d 378, 380 (1970) ("[T]he courts in the absence of legislative authority have no authority, except in cases of fraud, to review or determine the value of property which has been assessed for purposes of taxation by appropriate administrative officers"). Separation of powers prevented the courts from creating a standard of review, other than fraud, to apply within the tax objection proceedings. To do so would have usurped the legislative power to say what the law shall be.

Because no standard for directly reviewing property tax assessments had been provided by the legislature, the cases cited by respondents deal solely with the

nature and scope of the judicial remedy available in tax objection cases in the absence of a statutorily defined standard of review. The cases do not discuss the validity of any statute similar to section 23—15. The cases cited by respondents establish that, prior to the enactment of section 23—15, the courts could use only their equitable power against fraud to complement the available statutory remedies. However, the cases do not hold that the General Assembly itself was prevented from enacting a broader form of judicial review.

Section 9 of article VI of our constitution expressly provides that the circuit courts "shall have such power to review administrative action as provided by law." Ill. Const. 1970, art. VI, § 9. The phrase "as provided by law" is used "[w]hen our constitution intends that the legislature is to act in governing the activities of the court." *People v. Joseph*, 113 Ill. 2d 36, 43 (1986). The power of the legislature to broaden the right of judicial review of property tax assessments beyond fraud or constructive fraud is clearly warranted by the language of article VI, section 9. Accordingly, we hold that the legislature may provide for a direct standard of judicial review of property tax assessments other than fraud or constructive fraud.

Respondents maintain that even if the legislature may constitutionally provide for a standard of judicial review of property tax assessments other than fraud or constructive fraud, it may not adopt the standard set forth in section 23—15. Respondents specifically challenge the language in section 23—15 which provides that objections to property tax assessments "shall be heard de novo by the court." See 35 ILCS 200/23—15(b)(3) (West 1996). Respondents contend that by mandating that the tax objections "shall be heard de novo" from the board of appeals or review, the legislature has improperly granted the courts the same executive

authority possessed by those boards and, thus, violated the principle of separation of powers.

The separation of powers provision of the Illinois Constitution provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. The doctrine of separation of powers "does not contemplate that there should be ' "rigidly separated compartments" ' " of government. *McAlister v. Schick*, 147 Ill. 2d 84, 95 (1992). Nor does it "inexorably preclude one of the three branches of government from exercising powers which could also be given to another branch." *Inghram*, 118 Ill. 2d at 149.

In support of their contention that section 23—15 violates the separation of powers provision, respondents rely upon *West End Savings & Loan Ass'n v. Smith*, 16 Ill. 2d 523 (1959), and *Borreson v. Department of Public Welfare*, 368 Ill. 425 (1938). In *West End*, this court held unconstitutional a section of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1957, ch. 32, par. 701 *et seq.*) which provided for judicial review of an administrative decision regarding whether a savings and loan association could move from one location to another. The statute provided that any person who objected to such a decision could "apply to the Circuit Court *** for an adjudication of the validity of the decision *** and the matter shall be tried de novo by the court." Ill. Rev. Stat. 1957, ch. 32, par. 860. See *Mensik v. Smith*, 18 Ill. 2d 572, 585 (1960). In holding that the statute violated the separation of powers provision, this court noted the general rule that "where authority has been conferred upon administrative agencies to perform functions of an executive nature, provisions for trial *de novo* in courts of law violate the separation-of-powers principle." *West End*, 16 Ill. 2d at 525. The court explained that this rule was based on the theory that when an administrative

agency is given authority to decide matters which are "not judicially cognizable," and a statute "vest[s] in courts a supervisory power which is not limited to a review of the administrative action but extends to a re-determination of factual issues, [the effect of the stat-ute] is to grant, unlawfully, a power to exercise execu-tive functions." *West End*, 16 Ill. 2d at 525. Applying these principles to the statute at issue, the *West End* court concluded that the determination of the appropri-ate locations of the savings and loan associations, and the appraisal of factors weighing on those decisions, was "executive in nature" and fell "outside that class to which judicial processes are limited." *West End*, 16 Ill. 2d at 526. Thus, the statute which provided for a *de novo* trial in the circuit court improperly vested the courts "with powers to determine and decide matters of an executive or legislative character," and, therefore, violated the separation of powers provision. *West End*, 16 Ill. 2d at 526.

In *Borreson*, this court held unconstitutional a stat-ute which granted an applicant the right to "trial *de novo*" in the circuit court when, by administrative deci-sion, the applicant was denied welfare benefits under the Old Age Assistance Act (Ill. Rev. Stat. 1937, ch. 23, par. 410 *et seq.*). The *Borreson* court emphasized that the administration of the program for assistance to the aged was "essentially an executive function," and fur-ther determined that "[w]hether assistance should be granted, modified, or denied, presents no question of law or fact for judicial determination." *Borreson*, 368 Ill. at 432. As in *West End*, the *Borreson* court concluded that because the statute at issue provided for trial *de novo*, the circuit court could "*independently* determine issues of fact or conduct and substitute its own judgment and discretion for the judgment of a ministerial body." (Emphasis added.) *Borreson*, 368 Ill. at 432. Therefore,

the statute violated the separation of powers provision. *Borreson*, 368 Ill. at 434. *West End* and *Borreson* thus establish that a statute violates the separation of powers provision when it gives the judiciary the responsibility to "independently and originally" perform a "nonjudicial" function. *Fields Jeep-Eagle, Inc. v. Chrysler Corp.*, 163 Ill. 2d 462, 472 (1994).

The constitutional defects which existed in the statutes reviewed in *West End* and *Borreson* are not present in section 23—15. First, unlike the substantive matters found "not judicially cognizable," in *West End* and *Borreson*, the administrative determination of an individual's property rights has long been held to be within the reviewing province of the courts. In *Rowand v. Little Vermilion Special Drainage District*, 254 Ill. 543 (1912), this court upheld a statute which allowed judicial review of what was "in effect, a valuation [of land], for assessment purposes" made by drainage commissioners. *Rowand*, 254 Ill. at 547. The court noted that "this court has sustained statutes allowing appeals from non-judicial boards and bodies where the subject matter involved some personal or property right which it is the province of the courts to determine and protect." *Rowand*, 254 Ill. at 547. The court also observed that "[i]t would be a reproach to our judicial system if there were no redress for possible wrongs that might be inflicted by an unequal and oppressive classification of lands in a drainage district for assessment purposes." *Rowand*, 254 Ill. at 548. See also *Investors Syndicate of America, Inc. v. Hughes*, 378 Ill. 413, 417-19 (1941); *In re Estate of Barker*, 63 Ill. 2d 113 (1976) (upholding a provision of the former Illinois inheritance tax act which granted judicial review in the circuit court from what was characterized as an administrative decision fixing the value of property for purposes of taxation); *Board of Supervisors v. Chicago, Burlington & Quincy R.R. Co.*,

44 Ill. 229, 235 (1867) (upholding, on jurisdictional grounds, statute which provided for judicial review of property tax assessments, and noting that the statute was "not in conflict with any provision of the Constitution"). Indeed, the *West End* court itself noted the general distinction between policy decisions which are purely executive or legislative in nature, and the determination of an individual's property rights:

> "Where the court is to determine from pleadings whether the order assailed is lawful and reasonable, and where the questions presented concern property rights of which the court has jurisdiction, there is no transgression of constitutional requirements. (*Investors Syndicate of America v. Hughes*, 378 Ill. 413.) Statutes providing for such procedure merely authorize the court to exercise what is already a part of its function." *West End*, 16 Ill. 2d at 526.

*Cf. Murneigh v. Gainer*, 177 Ill. 2d 287, 307-08 (1997) (statute which compelled the judiciary to process blood collection demands for certain convicted sex offenders unconstitutionally imposed "nonjudicial" tasks upon the courts).

A second, and equally significant difference between the statutes at issue in *West End* and *Borreson*, and section 23—15, relates to the scope of the circuit court proceedings created by the statutes. The circuit court trials provided for in *West End* and *Borreson* were unconditional *de novo* proceedings, *i.e.*, proceedings in which the matter at issue was to be tried " 'anew the same as if it had not been heard before and as if no decision had been previously rendered.' [Citation.]" *Creamer v. Police Pension Fund Board*, 69 Ill. App. 3d 792, 796 (1978). As respondents themselves observe, the *de novo* trials authorized by the statutes in *West End* and *Borreson* permitted the circuit court to "completely disregard the decision of the administrative agency" and to give the agency's decision "no deference." Because no deference was given to the administrative decisions, the

statutes in *West End* and *Borreson* unlawfully permitted the circuit court to exercise the entire executive function of the administrative agency.

Under section 23—15, however, considerable deference is given to the decisions made by the board of review or appeals. Section 23—15 expressly states that "[t]he taxes, assessments, and levies that are the subject of the objection shall be presumed correct and legal." 35 ILCS 200/23—15(b)(2) (West 1996). This presumption can only be overcome by "clear and convincing evidence." 35 ILCS 200/23—15(b)(2) (West 1996). Even if a tax objector can present to the circuit court a tax assessment which is equally as credible as the assessment which was adopted by the board, the board's assessment must be sustained. See Executive Summary of the Report of the Civic Federation Task Force on Reform of the Cook County Property Tax Appeals Process 5 (March 2, 1995) (noting that when "the outcome turns solely on the competing opinions of equally compelling witnesses *** the assessment would be sustained since such evidence would not constitute clear and convincing proof that the assessment is incorrect").[1] Thus, contrary to respondents' assertions, under section 23—15 the court does not make an "independent" or "original" tax assessment. Section 23—15 mandates that deference be given to the tax assessment adopted by the board of review or appeals. The boards themselves are not bound by any presumption that the assessment is correct and may adopt an assessment as justice requires. See 35 ILCS 200/16—55 (West 1994) ("the board [of review]

---

[1]The Civic Federation describes itself as "an independent, non-partisan taxpayer watchdog and government research organization." The Report of the Civic Federation Task Force on Reform of the Cook County Property Tax Appeals Process was incorporated as part of the legislative history of section 23—15. See 89th Ill. Gen. Assem., Senate Proceedings, May 23, 1995, at 111 (statements of Senator O'Malley).

shall review the assessment, and correct it, as appears to be just"); 35 ILCS 200/16—30 (West 1994); 35 ILCS 200/16—95 (West 1996). Accordingly, the court does not have the same discretionary authority as that given to the board of review or appeals.

The conclusion that section 23—15 does not give the circuit court the discretionary authority possessed by the assessing officials is not altered by the existence of the phrase "heard de novo" within the statute. The phrase "heard de novo" is used in section 23—15 to indicate that evidence may be presented in the circuit court and that the tax objection proceedings are not an appeal on the record from the board of appeals or review.[2] See Executive Summary of the Report of the Civic Federation Task Force on Reform of the Cook County Property Tax Appeals Process at 4 (March 2, 1995) ("As under existing law, tax objections will be tried to the court without a jury, and the court will hear the matter *de novo* rather than as an appeal from the action of the assessing officials"). Because section 23—15 unequivocally grants the property tax assessment adopted by the board a presumption of correctness, the use of the term "de novo" cannot mean, as it did in *West End* and *Borreson*, that the administrative decision is given no deference, or that the court is to make a completely independent assessment. The legislative his-

[2]Although we need not, and do not, rely upon this point in reaching our conclusion that section 23—15 comports with the separation of powers provision, we note that record review of property tax assessments may not be feasible. As petitioner argues: "[B]oards of appeals and review in Illinois are not presently bodies of record. To make them so given the pressures of the annual tax cycle would be impossible (*e.g.*, the Cook County Board of Appeals hears from 60,000 to 90,000 complaints per year). *** [R]ecord review of the board of appeals is thus wholly impractical, and it was properly rejected as an alternative by the General Assembly."

tory of section 23—15 supports the conclusion that the legislature did not intend for the circuit court to have complete discretion in considering the tax assessment:

> "In resolving the questions of the standard of review and burden of proof in assessment challenges, the Task Force was required to balance the need to provide effective taxpayer relief against the need to avoid opening up the process so widely that the courts could potentially be called on to reassess any or all property in the county. The consensus on the Task Force was to provide for a standard of review permitting recovery upon proof of an incorrect or illegal assessment, but to require the taxpayer to meet a burden of proof by 'clear and convincing' evidence (the highest burden applied in civil litigation, but clearly not the criminal burden, 'beyond a reasonable doubt') in order to establish that such an incorrect or illegal assessment has occurred. This choice of balance was preferred over the alternative of choosing the lower burden of proof and then attempting the seemingly impossible task of defining an enhanced standard of review, in which the 'degree of incorrectness' would be in issue." Executive Summary of the Report of the Civic Federation Task Force on Reform of the Cook County Property Tax Appeals Process 5 (March 2, 1995).

Furthermore, the fact that additional evidence may be presented in the circuit court does not, in itself, render the statute constitutionally infirm. See *Illinois Hospital Service, Inc. v. Gerber*, 18 Ill. 2d 531, 534 (1960); *Illinois Bell Telephone Co. v. Fox*, 402 Ill. 617, 627 (1949). See also *Rowand*, 254 Ill. at 545 (upholding, though not directly addressing, a provision of a statute which permitted a jury, when reviewing what was effectively a property tax assessment, to "hear allegations and testimony in opposition to and in support of the same," and to "correct" the assessment if "too high or too low." Ill. Rev. Stat. 1911, ch. 42, par. 99).

This court has explained that " '[a] branch of the judiciary does not exercise executive or administrative power unless there devolves upon the court the same

power to exercise discretion as has been committed to the administrative agency. (*Borreson v. Department of Public Welfare*, 368 Ill. 425.)'" *Illinois Hospital Service*, 18 Ill. 2d at 534, quoting *Illinois Bell Telephone*, 402 Ill. at 626-27. Given the presumption of correctness which is afforded the property tax assessment under section 23—15, it cannot be said that the statute grants the circuit court the same powers of discretion that have been committed to the board of appeals or review.

In addition, section 23—15 does not impose any duty or power on the courts to classify properties for assessment, to inspect properties, or to set assessment policies. In sum, none of the myriad executive or administrative activities which are carried out by assessing officials are conferred on the courts by section 23—15. The only power granted to the courts is the power to consider a matter which falls within the reviewing province of the courts, and to do so in a way that gives considerable deference to the administrative decision at issue. Therefore, in light of the prior precedents of this court, and the language of section 23—15 itself, we conclude that section 23—15 does not violate the separation of powers provision. Because we have determined that section 23—15 is constitutional, we grant that portion of the petition for writ of *mandamus* which requests this court to order the respondents to vacate their orders holding section 23—15 unconstitutional.

## II

Responderts seek this court's guidance as to the standards to be applied under the settlement provision of the Property Tax Code, section 23—30. See 35 ILCS 200/23—30 (West 1996). Respondents express concern that the statute prevents the trial judge from exercising any discretion as to the contents of the agreed orders.

Section 23—30 provides:

"Following the filing of an objection under Section 23—

10, the court may hold a conference with the objector and the State's Attorney. Compromise agreements on tax objections reached by conference shall be filed with the court, and the parties shall prepare an order covering the settlement and submit the order to the court for entry." 35 ILCS 200/23—30 (West 1996).

The trial court's role in the settlement proceedings under section 23—30 is a limited one. The State's Attorney has express authority under section 23—30 to compromise tax objections, as well as the inherent executive authority to compromise tax matters generally. *In re Application of the County Collector for Delinquent Taxes, for at Least Five Years Prior to 1987*, 155 Ill. 2d 520, 527-31 (1993). The State's Attorney's compromise and settlement of a tax objection under section 23—30 cannot be impeached "on the grounds that a better result should have been reached, or for any other reason short of fraud or bad faith." *People ex rel. Thompson v. Anderson*, 119 Ill. App. 3d 932, 940 (1983). Similarly, agreed orders are generally not subject to appeal or attack except where the order has resulted from "fraudulent misrepresentation, coercion, incompetence of one of the parties, gross disparity in the position or capacity of the parties, or newly discovered evidence." *In re Haber*, 99 Ill. App. 3d 306, 309 (1981); *Thompson v. IFA, Inc.*, 181 Ill. App. 3d 293, 296-98 (1989). Given these factors, the merits of the settlement itself are generally not subject to examination by the trial court.

However, the trial court must exercise its discretion in considering a settlement with respect to certain important issues. Specifically, the trial court must consider whether the settlement was negotiated by fraud or in bad faith (see, *e.g.*, *Anderson*, 119 Ill. App. 3d at 940) and whether the State's Attorney has adequately represented the public interest in reaching the settlement (see, *e.g.*, *Channahon Park District v. Bosworth*, 145 Ill. App. 3d 820, 825 (1986)). In exercising its discre-

tion, the trial court may need to examine the terms of the settlement. However, the purpose of this examination will not be to judge the merits of the agreement, but rather to determine whether fraud or inadequate representation has occurred.

In their petition for a writ of *mandamus*, petitioners request that respondents be ordered to vacate their orders refusing settlements in tax objection cases based on the unconstitutionality of section 23—15, and compelled to enter settlement orders if the State's Attorney has negotiated in good faith and has adequately represented the public interest. We note that in the tax objection cases at issue, the circuit court has not yet expressly considered whether the State's Attorney has satisfied these conditions. In addition, petitioners acknowledge that the determination of whether the State's Attorney has negotiated in good faith and has adequately represented the public interest is left to the discretion of the trial court. It is well settled that *mandamus* is not available to compel discretionary acts. See, *e.g.*, *Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502, 507 (1994). Accordingly, with respect to section 23—30, we grant only that portion of the petition for writ of *mandamus* which requests this court to order the respondents to vacate their orders refusing settlements in tax objection cases based on the unconstitutionality of section 23—15.

Petitioners also request that respondents be ordered to withdraw the public notice issued by Presiding Judge Barth and Judge Murphy suspending all tax objection cases. The suspension involves internal administrative functions of the circuit court. Having determined that section 23—15 is constitutional, we assume that the circuit court will proceed in tax objection cases under the dictates of sections 23—15 and 23—30.

## CONCLUSION

For the foregoing reasons the petition for writ of

*mandamus* is granted in part and denied in part. The respondents are ordered to vacate their orders which hold section 23—15 unconstitutional, and vacate their orders refusing settlements in tax objection cases based on the unconstitutionality of section 23—15.

*Writ granted in part and denied in part.*

JUSTICE MILLER, dissenting:

I agree with the majority that the legislature may provide by law for the administrative review of property tax assessments in cases other than those involving fraud. Unlike the majority, however, I believe that section 23—15 of the Property Tax Code (35 ILCS 200/23—15 (West 1996)) violates the separation of powers provision of the Illinois Constitution (Ill. Const. 1970, art. II, § 1) by delegating to the courts the authority to set property tax assessments under the guise of administrative review.

Section 23—15 provides that property tax objections "shall be heard de novo by the court" (35 ILCS 200/23—15(b)(3) (West 1996)) and that the plaintiff (tax objector) "has the burden of proving any contested matter of fact by clear and convincing evidence" (35 ILCS 200/23—15(b)(2) (West 1996)). Under the statute, a court conducts what is in effect a *de novo* proceeding in which evidence is presented and factual findings are made. After considering the evidence and making findings of fact, the "court shall grant relief in the cases in which the objector meets the burden of proof under this Section and shows an assessment to be incorrect or illegal." 35 ILCS 200/23—15(b)(3) (West 1996).

Thus, once a court has determined that a tax assessment is incorrect or illegal, the court is directed to grant relief. Section 23—15 then provides that a successful objector is entitled to a court-ordered tax refund. See 35 ILCS 200/23—15(c) (West 1996). It is apparent that before ordering a refund pursuant to section 23—15(c),

a judge must first set a property tax assessment so that the refund can be calculated. Therefore, instead of providing for the administrative review of a property tax assessment, section 23—15 provides for the judicial determination of that assessment.

As noted by the majority (181 Ill. 2d at 536-37), "[a] branch of the judiciary does not exercise executive or administrative power unless there devolves upon the court the same power to exercise discretion as has been committed to the administrative agency." *Illinois Bell Telephone Co. v. Fox*, 402 Ill. 2d 617, 626-27 (1949). By providing for the *de novo* judicial determination of property tax assessments, section 23—15 authorizes the courts to exercise the same powers of discretion as those exercised by local assessment officers. In doing so, section 23—15 violates the separation of powers provision of the Illinois Constitution. Accordingly, I respectfully dissent.

JUSTICES HEIPLE and NICKELS join in this dissent.