(No. 30900.—

THE PEOPLE *ex rel.* James H. Ingram, County Collector, Appellee, *vs.* WASSON COAL COMPANY, Appellant.

*Opinion filed March 24, 1949.*

Gunn, and Thompson, JJ., dissenting.

S. D. Wise, of Harrisburg, for appellant.

K. C. Ronalds, State's Attorney, of Harrisburg, for appellee.

Mr. Chief Justice Fulton delivered the opinion of the court:

The defendant, the Wasson Coal Company, having previously paid seventy-five per cent of its taxes under protest, filed an objection in the county court of Saline County to an application of the county collector for judgment against and an order for the sale of real estate for the nonpayment of taxes for the year 1946. From the judgment overruling its objection, the taxpayer prosecutes this appeal.

Defendant owns the surface of four and four-fifths acres, designated as its mine site No. 1, in the town of Raleigh, in Saline County. For the year 1946, this property was assessed at $300,000. By its objection, defendant charged that the taxes were extended upon assessed valuations arbitrarily determined by the Department of Revenue and/or the county clerk; that the valuation upon which the protested taxes were extended exceeds the fair cash

market value of the property assessed; that the assessed valuation of the particular property is three times its fair cash value and therefore violates section 20(1) of the Revenue Act (Ill. Rev. Stat. 1947, chap. 120, par. 501,) which prescribes that real estate shall be valued, as follows: "Each tract or lot of real property shall be valued at its fair cash value, estimated at the price it would bring at a fair, voluntary sale," and, further, that the assessment on the mine site is illegal for the reason it violates section 20(4) of the Revenue Act which provides, in part, "Any real property on which there is a coal or other mine, or stone or other quarry, shall be valued at its fair cash value, estimated at the price such property, including the mine or quarry, would bring at a fair, voluntary sale." Defendant's objection alleged, further, that the assessment of its property violates the due-process clause of the constitution of Illinois; that the assessment and the extension and collection of the tax violates section 1 of article IX of our constitution for the reason that the tax is not in just proportion to the fair cash value of the property and, finally, that the assessment and the tax extended are not the results of errors in judgment but are, instead, the results of a mathematical calculation required by amendments to the Revenue Act added in 1945 and, in this particular instance, are so excessive as to amount to constructive fraud.

It appears that, in 1946, the assessor of the town of Raleigh fixed a value of $60,000 upon the mine site owned by defendant. On December 12, 1946, the Department of Revenue, exercising its power to lower or raise the total assessed value of property in any county as returned by the county clerk, conformably to section 146 of the Revenue Act, as amended in 1945, (Ill. Rev. Stat. 1947, chap. 120, par. 627,) certified the application of a multiplier of five to listed or assessed valuations of Saline County, as revised and corrected by the board of review. The application of the multiplier of five resulted in an increase of the value

of all properties within the county to that extent and automatically increased the assessment of defendant's mine to $300,000. J. L. Pickering, secretary-treasurer of the coal company, testified that, on August 26, 1947, he, the president and the attorney of the company appeared in proceedings before the board of review with respect to the assessment and asked for a certificate of error covering the assessment for the year 1946. In seeking a certificate of error, defendant apparently relied upon paragraph 7 of section 108 of the Revenue Act (Ill. Rev. Stat. 1947, chap. 120, par. 589,) which, to the extent pertinent, provides that the board of review shall, at any time before judgment, if an error or mistake is discovered (other than errors of judgment as to the valuation of any real or personal property,) in an assessment of any real or personal property belonging to any person or corporation, issue a certificate setting forth the nature of such error and the cause or causes which operated to produce the error or mistake, to the taxpayer erroneously assessed, which certificate, when properly endorsed by the assessor showing his concurrence therein, may be used in evidence in any court of competent jurisdiction. Issuance of a certificate of error was refused. Thereafter, on October 10, 1947, defendant filed its objection to the taxes for the year 1946.

To support defendant's objection, Pickering testified that, in his opinion, on April 1, 1946, the fair cash market value of mining site No. 1 did not exceed $100,000. L. A. Wasson, president and general manager of the company, described the property in question as a shaft mine, an "old type mine," the only mine now owned by the company, 320 feet deep and operating in its forty-third year; observed that there had been no recent capital improvements in the machinery, equipment and facilities of the mine; stated that the mine does not have any of the strictly modern processing facilities for the treatment and processing of coal, and expressed his opinion that the fair cash market

value of the property on April 1, 1946, did not exceed $100,000. According to the witness, he offered to sell the property for this sum but could not procure a purchaser, commenting that anyone who would buy the property at this price would be foolish. He added that the shareholders of the company offered to sell the mine for $100,000 to the general manager of the Sahara Coal Company and that, although the Sahara Coal Company was financially able to buy the mine, the offer was not accepted. A. B. McLaren, long engaged in the coal business in southern Illinois and well acquainted with the mining industry in this part of the State, testified that he made an appraisal of the Wasson No. 1 mine in 1947. He gave a general description of the mine, its equipment and facilities but, when asked the question whether he had any idea with respect to the fair cash market value of the mine property as of April 1, 1946, replied, "I would say no." To the further inquiry, "You don't have an opinion?" he answered, "No, not in 1946," and to the next question, "On April 1, 1946?" he said, "No, because I made my inspection afterwards." Testifying further, McLaren stated that the value of the property in the early part of 1947, when he made his inspection, did not exceed $100,000. When asked, "You think it would amount to that [$100,000]?" he answered, "I do." He added that he did not observe anything to indicate any material changes in its condition after April 1, 1946. In making his appraisal, he stated that he took into consideration the physical condition of the property but did not consider the income of the Wasson Coal Company from the mine prior to the time of the appraisal and that, in particular, he did not know whether it had been losing money or, on the other hand, had been operating at a profit. He did not check the figures on operating costs. McLaren's testimony is fairly summarized by his statement that although he estimated the mine was producing about 1200 tons per day, he would not give $100,000 for the mine as of the date he

examined it in 1947, explaining that he meant no man or group of men connected with the mining business, in his opinion, would pay this sum.

Defendant introduced in evidence an exhibit which is a comparison of real-estate taxes paid on mine sites by various operating companies in the county for the year 1946. This exhibit contains no information relative to the basis of determining a valuation on the properties, but shows that the taxes of another coal company per ton mined for 1946 were considerably larger than the taxes per ton of the Wasson Coal Company. The exhibit, further, emphasizes that the appellant is complaining of its tax and assessment as being higher by comparison than the tax and assessment on other like properties within the county. Appellant is not contending that the multiplier certified was erroneous, either in amount or in its application to all of the properties within the county as a whole, or that the multiplier of five resulted in a wrongful total valuation within the county, except as to its own property.

Seeking a reversal of the judgment against it, appellant places reliance upon the principle that where an assessed valuation of property is so excessive and made under circumstances justifying the conclusion it was not honestly made and was known to be excessive, the assessment is open to judicial review. (*People ex rel. Wangelin* v. *Gillespie,* 358 Ill. 40; *People ex rel. Carr* v. *Stewart,* 315 Ill. 25; *People's Gas Light and Coke Co.* v. *Stuckart,* 286 Ill. 164.) It is not necessary, in order to have an assessment set aside in the collector's proceeding, to show fraud in its generally accepted meaning, but if the facts disclose that the taxing authorities have assessed the property for taxation purposes at a valuation grossly in excess of its market value, and that such assessment was deliberately and wilfully made, such conduct constitutes constructive fraud. (*People ex rel. Wangelin* v. *Wiggins Ferry Co.* 357 Ill. 173.) On the other hand, the assessed value of the prop-

erty for taxation purposes cannot be impeached merely because of a difference of opinion as to its value between the assessing officers and the court. (*People ex rel. Hellyer* v. *Hendrickson,* 373 Ill. 99; *People* v. *Wiggins Ferry Co.* 357 Ill. 173; *People* v. *Stewart,* 315 Ill. 25; *People's Gas Light and Coke Co.* v. *Stuckart,* 286 Ill. 164.) To sustain the judgment of the county court, the collector relies upon the long-established proposition that where a taxpayer fails to take advantage of the statutory remedy of appealing to the board of review from an assessor's valuation of its property, it cannot complain of an excessive assessment, in the absence of proof of fraud, either actual or constructive. *People ex rel. Tedrick* v. *Allied Oil Corp.* 388 Ill. 219.

To support its contention the appellant states that the assessment of $300,000 and the tax extended thereon are not the results of an error in judgment, but result from the application of the multiplier of five by the Department of Revenue and are so excessive as to amount to fraud. It excuses its failure to appear before the board of Saline County during the regular session in 1946 on the ground that there was no need for complaining or seeking any relief for the reason that, in its opinion, the assessment of the $60,000 did not exceed the fair cash value of its property. To logically discuss this portion of appellant's brief, it is necessary to distinguish the assessment, as such, from the tax extended thereon.

The amount of tax extended upon any assessment is not determined by the amount of the assessment, but by the demands of the local taxing authorities. The assessment is merely the value placed upon the property to which the rate per cent is applied to reach the amount of taxes required by such local taxing authorities.

The appellant contends that the application of the multiplier as certified by the Department of Revenue delegates to such Department the power to assess such property contrary to section 1 of article 9 of the constitution of the

State of Illinois in that the Department of Revenue is not some person or persons elected or appointed as provided therein. Section 146 of the Revenue Act (Ill. Rev. Stat. 1947, chap. 120, par. 627,) provides that the Department shall act as an equalizing authority and, in so acting, it lowers or raises the total assessed value of property in any county so as to make the property in such county bear a just relation to the assessed value of property in other counties. This section merely refers to the equalization of property values over the entire State and is designed to bring all properties in all counties to a one-hundred-per-cent valuation.

Section 1 of article IX of our constitution ordains that the valuation of property for taxation shall be "ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct," and where the value of property for taxation has been fixed by the officials designated by statute, such value is not, in the absence of fraud, subject to the supervision of the judicial department of the State. (*Tuttle v. Bell,* 377 Ill. 510.) The presumption obtains that a tax is just and that the officers levying it have honestly discharged their duties, and the burden rests upon the taxpayer to establish fraud by clear and sufficient evidence. (*People ex rel. Nash* v. *Norton,* 358 Ill. 272.) It must be noted that defendant does not contend that there was an intentional overassessment, saying, "It was the result of a change in the Revenue Laws and not the result of the exercise of any judgment in regard to valuation by any assessing official."

The appellant overlooks the fact that the alleged over-assessment of $300,000 was based on the claimed over-assessment of $60,000 and is a result of a proportionate increase and not an individual increase. This is borne out by the facts in this case. The record here discloses that, for many years, the assessed valuation of property in Saline County was obtained by using a debasement figure

or equalization factor of twenty per cent. Applying these factors to the instant case, we find that the assessed valuation of $60,000 placed on appellant's mine site for the years prior to 1946 did not purport to represent the fair cash market value of the property, as contended by appellant, but, at best, only twenty per cent of its value. Under any argument that the $300,000 figure represents overassessment of the property, it must logically follow that, by comparison with other like properties in the county, the property was overassessed at $60,000. All of the property in the county was increased by using the multiplier of five and, by the application of this multiplier, the appellant's assessment was increased proportionately along with other properties in the county. The appellant had as much ground for complaining of the relationship of the $60,000 assessment to other properties in the county as it would have for complaining of the $300,000 assessment.

This is even more fully illustrated when we consider the extension of a tax upon the assessment reached. The Revenue Act (Ill. Rev. Stat. 1947, chap. 120, pars. 634-637, incl.,) provides that the tax rate for any particular purpose is based upon the rate per cent required to produce the amount of tax levied by any particular taxing body. In other words, the total amounts needed are first determined by the taxing bodies and then the rate per cent required to raise this amount of revenue is applied against the total assessment. Where the amount of tax necessary can be reached under the maximum rate limits, the taxpayer will pay no more in tax because of the application of a multiplier than he would have paid if such multiplier had not been applied. The only occasion when an application of a multiplier will increase the tax of the taxpayer, (and then such tax will be increased only in proportion to increases on other property throughout the entire county,) is when the amount of money requested by the taxing bodies requires a rate per cent on assessed values prior to the

application of the multiplier which is higher than the maximum tax rate limit allowed by law. Then, and then only, can the tax be increased by reason of the application of the multiplier. The appellant here does not contend or argue that this has been the situation in the instant cause. It offers no proof that its tax has been increased by reason of the application of the multiplier nor does it state that the tax rate limit was exceeded by reason of the application of the multiplier. It has not shown that it has paid any more tax on the $300,000 assessment than it would have paid on the assessment of $60,000. We are entitled to assume that the tax rate limit would not have been reached under whatever valuation had been placed on the property and that appellant would have paid the same tax on the $60,000 assessment as it would pay under the $300,000 assessment.

With this in mind, it is apparent, that where the appellant complains of the difference in valuation between his property and other properties, that complaint should have been made in 1946 as to the $60,000 which was proportionately as great an overassessment as the assessment of $300,000 after the application of the multiplier. Its remedies under the statute, as set forth in the cases heretofore discussed, were open to it in 1946 and it did not avail itself of its rights under the law at that time. Appellant was entirely content with the previous valuation of $60,000 which did not purport to represent the fair cash market value, but represented only twenty per cent of the fair market value. The present valuation of $300,000, in reality, and for all practical purposes, merely reflects a 100 per cent valuation of the property which, prior to the year 1946, when assessed at twenty per cent of its value, was wholly agreeable to appellant. This being so, appellant is not in a position to assert that its coal mine was valued at more than its fair cash market value, within the purview of section 20 of the Revenue Act, or

that the challenged assessment violates either the due-process clause or section 1 of article IX of our constitution. Defendant failed to make an adequate showing that the constitutional requirement of uniformity in taxation was not satisfied. In particular, it did not prove that its property was assessed at a higher per cent of its true value than other property subject to like taxation. Apparently, defendant did not see fit to make complaint in the past that its property was assessed in excess of twenty per cent of its true full value, the equalization factor for Saline County, or that it was discriminated against in any way in its assessment. In this connection, we are constrained to observe the record discloses that, for the year 1947, appellant sought and obtained a reduction in its assessment from $300,000 to $200,000, and appears to be satisfied with the assessment, as reduced, despite the fact that it sought a valuation of $100,000 for the year 1946. The appellant cites an opinion of Judge Igoe in the District Court of the United States for the Northern District of Illinois, the proceedings being docketed in said court as Nos. 63584 and 71912, for the proposition that the application of a multiplier by the Department of Revenue as to personal property resulted in a value of such property which was so grossly in excess of the full fair cash value of such property as to be illegal, void, arbitrary, discriminatory and fraudulent. It is clear from an examination of the findings and order that the case is distinguishable on its face. The determinative factor in Judge Igoe's opinion is that real-estate values were used in determining the multiplier to be used on personal property values. Such is not the case here.

For the reasons stated herein, the judgment of the county court of Saline County is affirmed.

*Judgment affirmed.*

Gunn and Thompson, JJ., dissenting.