Docket Nos. 104321, 104322, 104333 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

MADISON TWO ASSOCIATES *et al.*, Appellees, v. MARIA PAPPAS, Treasurer and *Ex Officio* Collector of Cook County, Appellant.

*Opinion filed February 22, 2008.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, and Garman concurred in the judgment and opinion.

Justice Kilbride dissented, with opinion.

Justice Burke took no part in the decision.

## OPINION

The issue in this case is whether taxing districts have the right to petition for leave to intervene in real estate tax objection cases filed by taxpayers in the circuit court of Cook County pursuant to the Property Tax Code (35 ILCS 200/1–1 *et seq.* (West 2002)). The circuit court held that such intervention was not permitted as a matter of law. It therefore denied petitions filed by the City of Chicago and the Chicago Board of Education under section 2–408 of the Code of Civil Procedure (735 ILCS 5/2–408 (West 2002)) seeking leave to intervene in 30 Cook County tax objection cases. In so doing, the

court made an express written finding under Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)) that there was no just reason for delaying either enforcement or appeal. The cases were then consolidated for review, and the appellate court reversed and remanded. 371 Ill. App. 3d 352.[1] The county collector of Cook County and two groups of taxpayers led, respectively, by Madison Two Associates and Shorenstein Realty Advisors, petitioned our court for leave to appeal. 210 Ill. 2d R. 315. We consolidated the three petitions and allowed them. We also allowed a consortium of 41 public school districts to file an *amicus curiae* brief in support of respondents, the City and the Board of Education. For the reasons that follow, the judgment of the appellate court is affirmed, and the matter will be remanded to the circuit court for a determination as to whether the petitions for leave to intervene filed by the City and the Board of Education should be granted.

The circumstances giving rise to the appeal are straightforward. Petitioner Madison Two Associates (Madison Two) holds an interest in certain real property located at 70 West Madison Street, in the City of Chicago, which is located in Cook County. The Cook County assessor's office determined that the property had a certain market value for the year 2001. Believing that this assessed value was too high, Madison Two filed a complaint with the Cook County board of review under section 16–95 of the Property Tax Code (35 ILCS 200/16–95 (West 2002)) asking that the assessment be reduced. Madison Two was entitled to seek such relief because it was a taxpayer with an interest in the property. By law, however, the assessment could also have been challenged by any taxpayer or any taxing district that has an interest in the assessment. 35 ILCS 200/16–95, 16–115 (West 2002).

After the board of review rendered its decision on Madison Two's complaint, Madison Two believed that the value at which its property was assessed for 2001 remained too high. Under the Property Tax Code, it had two options for challenging the board of review's

---

[1] As detailed by the appellate court, 7 of the 30 original actions were dismissed by the circuit court and 10 others were "resolved and/or dismissed" after the appeal was filed. 371 Ill. App. 3d at 353 n.1. Two more were settled and dismissed after the case reached our court.

decision: (1) it could have filed an appeal with the Property Tax Appeal Board (Board) (see 35 ILCS 200/16–160 (West 2002); 86 Ill. Adm. Code §1910.60(a) (2007) (amended at 31 Ill. Reg. 16222, eff. November 26, 2007)), or (2) it could have paid the real estate tax due on the property (see 35 ILCS 200/23–5 (West 2002)), and then filed a "tax objection complaint" with the circuit court of Cook County (see 35 ILCS 200/23–10 (West 2002)).[2] Where valuation is at issue, as is the case here, these options are mutually exclusive. If a taxpayer seeks review before the Property Tax Appeal Board, he or she is precluded from filing objections based upon valuation in the circuit court.[3] In the same way, if a taxpayer files objections based upon valuation in the circuit court, the taxpayer cannot file a petition contesting the assessment of the subject property with the Property Tax Appeal Board. 35 ILCS 200/16–160 (West 2002); 86 Ill. Adm. Code §§1910.50(f), (g) (2007) (amended at 31 Ill. Reg. 16222, eff. November 26, 2007).

As with a challenge to the assessor's valuation in the board of review, the right to seek review of the board of review's decision through the Property Tax Appeal Board or by means of a tax objection suit is not limited to taxpayers with an interest in the property. Appeals to the Board may also be brought by "any taxing body that has an interest" in the board of review's decision (35 ILCS 200/16–160 (West 2002); 86 Ill. Adm. Code §1910.10(c) (2007)

---

[2] Unlike the tax objection alternative, paying the property tax is not a prerequisite for seeking relief from the Property Tax Appeal Board. Pursuing the appeal through the Board does not, however, stay the obligation to pay the contested tax. If the tax falls due before the Board issues its decision, the tax must still be paid. If the Board subsequently lowers the assessment, any taxes paid on the portion of the assessment determined to have been unauthorized must be refunded with interest. 35 ILCS 200/16–185 (West 2002).

[3] Final decisions of the Board are, however, subject to judicial review pursuant to the Administrative Review Law (735 ILCS 5/3–101 *et seq.* (West 2002)). Where a change in assessed valuation of $300,000 or more is sought, review is taken directly to the district of the appellate court in which the property is located. 35 ILCS 200/16–195 (West 2002).

(amended at 21 Ill. Reg. 3706, eff. March 6, 1997); 86 Ill. Adm. Code §1910.60(b) (2007) (amended at 31 Ill. Reg. 16222, eff. November 26, 2007)), while tax objection complaints in circuit court may be filed by "*any person* [who] desires to object to all or any part of a property tax *** for any reason other than that the property is exempt from taxation." (Emphasis added.) 35 ILCS 200/23–5 (West 2002); see 35 ILCS 200/23–10 (West 2002). Under the Property Tax Code, the term "person" is defined to include a "corporation, company, firm, society, singular or plural number." 35 ILCS 200/1–125 (West 2002).

Proceedings before the Property Tax Appeal Board are governed by rules of practice and procedure promulgated by that body. See 35 ILCS 200/16–165, 16–170 (West 2002). These rules are set forth at 86 Ill. Adm. Code §1910.5 *et seq.* Under the Board's rules, participation in the appeal is not limited to the party who initiated it. Where an appeal has been filed by a taxpayer with respect to a decision pertinent to his or her own property, a taxing body with a revenue interest in the appeal may intervene. 86 Ill. Adm. Code §1910.60(d) (2007) (amended at 31 Ill. Reg. 16222, eff. November 26, 2007). Conversely, where the appeal has been brought by a taxing body with a revenue interest in the decision of the board of review, the owner or taxpayer whose property is involved may intervene. 86 Ill. Adm. Code §1910.60(c) (2007) (amended at 31 Ill. Reg. 16222, eff. November 26, 2007).

While the Board's rules and regulations apply to proceedings before that body, the procedures followed in circuit court on tax objection complaints are governed by the Property Tax Code itself and, where it is silent, by article II of the Code of Civil Procedure (735 ILCS 5/2–101 *et seq.* (West 2002)) and the rules of our court. Just as the rules and regulations governing appeals to the Board provide a mechanism for allowing additional parties to participate in such appeals, the Property Tax Code permits additional parties to participate in tax objection proceedings in circuit court. They may do so through either joinder or intervention. Section 23–15(a) of the Property Tax Code (35 ILCS 200/23–15(a) (West 2002)) governs joinder. It provides that joinder of additional parties as plaintiffs in the tax objection proceeding "shall be permitted to the same extent permitted by law in any personal action pending in the court and shall be in accordance with Section 2–404 of the Code of Civil Procedure

-4-

[735 ILCS 5/2–404 (West 2002)].” 35 ILCS 200/23–15(a) (West 2002). Section 2–404 of the Code of Civil Procedure, in turn, states that

> “[a]ll persons may join in one action as plaintiffs, in whom any right to relief in respect of or arising out of the same transaction or series of transactions is alleged to exist, whether jointly, severally or in the alternative, whenever if those persons had brought separate actions any common question of law or fact would arise.” 735 ILCS 5/2–404 (West 2002).

Unlike joinder, the Property Tax Code does not specify when intervention is permissible. As we have indicated and as has long been established, when the Property Tax Code is silent on a matter of procedure, the procedures specified by article II of the Code of Civil Procedure and the rules of our court apply instead. 735 ILCS 5/1–108(b) (West 2002); *People ex rel. Southfield Apartment Co. v. Jarecki*, 408 Ill. 266, 272 (1951); see *ABN Ambro Services Co. v. Naperville Park District*, 325 Ill. App. 3d 7, 10 (2001). The Code of Civil Procedure includes a provision governing intervention. See 735 ILCS 5/2–408 (West 2002). That provision has been held to apply to tax objection proceedings brought in circuit court under the Property Tax Code. See *ABN Ambro Services Co. v. Naperville Park District*, 325 Ill. App. 3d at 11. It has, in fact, been followed by our own court in tax objection proceedings. *In re Application of the County Collector of Du Page County for Judgment for Delinquent Taxes for the Year 1992*, 181 Ill. 2d 237, 247-48 (1998) (rejecting objectors’ argument that trial court erred in allowing intervention by park districts); see *People ex rel. Skidmore v. Anderson*, 56 Ill. 2d 334 (1974) (allowing and resolving appeal brought by intervening school districts). The provision states, in pertinent part:

> “(a) Upon timely application anyone shall be permitted as of right to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the representation of the applicant’s interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or

subject to the control or disposition of the court or a court officer.

(b) Upon timely application anyone may in the discretion of the court be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

* * *

(f) An intervenor shall have all the rights of an original party, except that the court may in its order allowing intervention, whether discretionary or a matter of right, provide that the applicant shall be bound by orders or judgments, theretofore entered or by evidence theretofore received, that the applicant shall not raise issues which might more properly have been raised at an earlier stage of the proceeding, that the applicant shall not raise new issues or add new parties, or that in other respects the applicant shall not interfere with the control of the litigation, as justice and the avoidance of undue delay may require." 735 ILCS 5/2–408 (West 2002).

Madison Two elected not to challenge the board of review's assessment decision through an appeal to PTAB. Instead, it chose to pay the tax due on the subject property and then file a tax objection complaint in circuit court. In accordance with section 23–15 of the Property Tax Code (35 ILCS 200/23–15(a) (West 2002)), Madison Two's complaint named as defendant the Cook County collector, Maria Pappas.[4] The complaint alleged that the assessment of the subject property was incorrect, illegal and excessive. By way of relief, it requested that the county collector be ordered to refund the taxes she had collected based on the excessive portion of the assessment. See 35 ILCS 200/23–15(b)(3), (c) (West 2002).

During the same period Madison Two filed its tax objection complaint, numerous other taxpayers, including petitioner Shorenstein Realty Advisors, filed similar tax objection complaints in the circuit

---

[4] Pappas serves as the county collector by virtue of her office as treasurer of Cook County. 35 ILCS 200/19–35 (West 2002).

court of Cook County challenging decisions by the Cook County board of review with respect to the valuation of property in which they held interests. In 30 of these cases, including Madison Two's, the City of Chicago (the City) and the Chicago Board of Education (the Board of Education) filed joint petitions pursuant to section 2–408 of the Code of Civil Procedure (735 ILCS 5/2–408 (West 2002)) seeking leave to intervene. Intervention was sought by the City and the Board of Education in order to oppose the objectors' attempts to reduce the assessments below the amounts set by the board of review.

All 30 cases in which intervention was requested involved major commercial buildings in downtown Chicago. The properties included the Sears Tower, the Aon Building, the John Hancock Center, Bank One Plaza (now known as Chase Tower), One and Two Prudential Plaza, 900 N. Michigan Ave., Three First National Plaza, The Emporis Building, the Sheraton Chicago Hotel and Towers, the United Building, Madison Plaza, Two Illinois Center, 321 North Clark Street (formerly known as the Quaker Tower), the Hyatt Regency Chicago, the Heller International Building, the Chicago Title Tower, the Chicago Mercantile Exchange, One IBM Plaza/330 N. Wabash, the Hilton Chicago, the Palmer House Hilton and Water Tower Place. The reason the City and the Board of Education sought to participate in these particular cases is the magnitude of the assessment reductions and corresponding property tax refunds they requested. If full relief were granted, tax refunds averaging over $1 million per property would be necessary.

The various petitions for intervention filed by the City and the Board of Education were all similar in form and content. They alleged, *inter alia*, that the City and the Board of Education should be permitted to join in the proceedings because: (1) the City and the Board of Education are taxing districts whose revenues would be adversely affected if the court allowed the various objections and reduced the assessed valuations (see 735 ILCS 5/2–408(a)(3) (West 2002)), (2) their claims or defenses with respect to the challenged assessments are predicated on the same questions of law and fact at issue in the objections filed by the taxpayers (see 735 ILCS 5/2–408(b)(2) (West 2002)), and (3) the State's Attorney lacks the resources necessary to adequately defend the board of review's assessment decisions and they will be bound by any order or judgment

entered by the circuit court in the circuit court proceedings attacking those assessment decisions (see 735 ILCS 5/2–408(a)(2) (West 2002)).

The Cook County collector, represented by the Cook County State's Attorney, filed written responses to the intervention petitions. Although the collector denied the intervenors' claims that the State's Attorney lacked sufficient resources to adequately defend the County's interests, she advised the court that intervention by the City and the Board of Education "may assist in the expeditious resolution of this matter by affording additional resources, including providing appraisals in addition to those appraisals obtained by the Collector." The collector further stated that the position of the City and the Board of Education with respect to these cases presented "a situation unique among the tax objections cases that are generally pending in [the circuit court of Cook County]" because the subject property was of "a singular type and class *** that comprises a disproportionately large part of the overall assessed value of the real estate tax base" of those taxing districts. The collector likewise acknowledged that the reductions in the assessed valuations and the tax refunds such reductions would require would have a considerable impact on both the City and the Board of Education.

In light of these considerations, the county collector advised the court that she had no objections to allowing the City and the Board of Education to intervene. Her approval, however, was not unconditional. The collector asserted that if intervention were permitted, it should be subject to the qualification that the State's Attorney retained sole authority to control the defense in the case and to compromise objectors' claims pursuant to section 23–30 of the Property Tax Code (35 ILCS 200/23–30 (West 2002)) and related provisions of the law. The collector expressly noted that such a limitation would be permissible under section 2–408(f) of the Code of Civil Procedure, which we set forth earlier in this opinion.

The tax objectors in the various cases also filed responses to the petitions for leave to intervene. In contrast to the county collector, they opposed intervention by the City and the Board of Education under any circumstances. They argued that the taxing districts have no legally cognizable interest in tax objection cases, that Property Tax Code does not authorize taxing districts to intervene in such cases and

that permitting taxing districts to participate in tax objection litigation would usurp the authority vested by law in the State's Attorney. Even if taxing districts were found to possess the right to intervene, they contended, intervention should not be permitted in this case because the City and the Board of Education had failed to exhaust their administrative remedies and their attorneys had not obtained the requisite legal authority to bring judicial proceedings.

The City and the Board of Education filed joint replies to the tax objectors' responses, disputing each of their arguments. A hearing was then conducted during which the court heard lengthy arguments by counsel. At the conclusion of that hearing, the circuit court announced that it would not permit either the City or the Board of Education to intervene. The court based that decision on its belief that, contrary to the authorities cited earlier in this opinion, the Property Tax Code should not be construed as authorizing taxing districts to intervene in tax objection cases, at least where, as here, the objection challenges the assessed valuation of the property, and that section 2–408 of the Code of Civil Procedure (735 ILCS 5/2–408 (West 2002)) is inapplicable to such proceedings. In light of that conclusion, the court had no occasion to reach the question of whether the requirements of section 2–408 would otherwise have been satisfied here.

After announcing his ruling, the circuit judge asked the parties to prepare a written order for his signature. They did so. That order, which the trial judge signed, included an express written finding under Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)) that there was no just reason for delaying either enforcement or appeal. The trial judge subsequently entered an additional order consolidating all of the cases for the limited purpose of appealing the denial of the petitions to intervene. The following day, the City and the Board of Education filed a joint notice of appeal.

As indicated earlier in this opinion, the appellate court reversed and remanded. Rejecting the circuit court's analysis, the appellate court concluded that section 2–408 of the Code of Civil Procedure (735 ILCS 5/2–408 (West 2002)) may be invoked by taxing districts in tax objection cases, including those involving assessed valuation issues. It remanded because it believed that a hearing was still necessary regarding whether the City and the Board of Education had satisfied the requirements for intervention under subsection (a)(2) or

(a)(3) of that statute (735 ILCS 5/2–408(a)(2), (a)(3) (West 2002)). 371 Ill. App. 3d at 358.[5] Although one justice dissented, that justice did not dispute that taxing districts have the right to seek intervention in tax objection cases pursuant to section 2–408.

The Cook County collector and the two groups of tax objectors led, respectively, by petitioners Madison Two and Shorenstein Realty Advisors, each filed separate petitions in our court seeking leave to appeal from the appellate court's judgment. We allowed all three petitions and consolidated the cases for purposes of briefing, argument and disposition. The central issue before us is the same in each case. It is not whether the particular taxing districts involved here should have been allowed to intervene. That is a question which neither the circuit court nor the appellate court reached. The problem they took up and the one we must now resolve is whether, as a matter of law, taxing districts may *ever* intervene in tax objection cases brought pursuant to section 23–10 of the Property Tax Code (35 ILCS 200/23–10 (West 2002)) in counties with 3,000,000 or more inhabitants. Because this is a question of law, our review is *de novo*. See *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 505 (2007).

We consider first the challenge asserted by the county collector, for it is easily resolved. The collector contends that the appellate court's decision is fatally infirm because it will have the effect of permitting taxing authorities to usurp the Cook County State's Attorney's constitutional authority to conduct and control litigation on behalf of the County and its statutory authority to compromise tax objections. That is not so. It will do neither. The effect of the appellate court's judgment is simply to confirm that taxing districts have the right to intervene in tax objection cases pending in circuit court, just as they have the right to intervene in proceedings before the board of review and appeals to the Property Tax Appeal Board.

---

[5] While the City and the Board of Education also invoked subsection (b) of the statute (735 ILCS 5/2–408(b) (West 2002)) in its petitions and argument in the circuit court, they apparently abandoned reliance on that provision when they reached the appellate court.

As a constitutional officer whose duties are analogous to and coincident with those of the Attorney General, a State's Attorney is the only person empowered to represent a county in matters when the county is the real party in interest. *County of Cook ex rel. Rifkin v. Bear Stearns & Co.*, 215 Ill. 2d 466, 483 (2005). In this case, however, Cook County is clearly not the only real party in interest. Numerous taxing districts, including the City and the Board of Education, also have a legally cognizable interest in the outcome of these proceedings. Under the Illinois Constitution of 1970, these governmental entities are separate and distinct from the County. See Ill. Const. 1970, art. VII, §§1, 2, 8. In seeking intervention in these proceedings, the only interests they seek to advance are their own. In no way are they attempting to direct the actions of the County, its officials or its legal representative, the State's Attorney.

That the State's Attorney and only the State's Attorney has the authority to compromise a tax objection claim is indisputable. See 35 ILCS 200/23–30 (West 2002). If the State's Attorney elects not to compromise, however, the propriety of the board of review's valuation decision will be for the circuit court to decide based upon the evidence and the law as presented by the parties. Through intervention, the City and the Board of Education hope to persuade the circuit court that the board of review's decision should be reduced no further, just as the tax objectors will attempt to persuade the court that the board of review's decision is contrary to law and excessive. No one would could possibly find a usurpation of a State's Attorney's authority in a taxpayer's attempt to persuade the circuit court that a board of review's valuation decision is incorrect and should be lowered. That being so, there can likewise be no suggestion of usurpation in a taxing body's attempt to persuade the circuit court that the board of review's decision on valuation is already too low and should be reduced no further. To hold otherwise would require us to adopt the untenable view that mere advocacy of a position is equivalent to control over how a case is decided.

The county collector has suggested that if we do not reverse the appellate court and bar intervention, tax objection suits will become clogged with taxing districts each insistent on having their own say regarding the challenged assessment. If that were so, however, one would expect to see a similar problem with proceedings in the board

of review and the Property Tax Appeal Board, where the right of taxing districts to intervene is not disputed. If such a thing is occurring, no evidence of it has been brought to our attention.

The matters presently before us today further belie any concern that taxing districts may come cascading into tax objection cases if intervention is permitted. The tax objections in this case involve some of the most valuable property in the entire state, in the state's most populous county, where taxing districts are abundant. Yet, in no case was intervention sought by more than two districts. If that is the situation at the high end of the assessment scale, it seems highly unlikely that more routine cases will attract intervenors in any significant numbers, if they attract any at all. In the overwhelming majority of cases, participating in tax objection cases will simply not be worth the taxing districts' time and expense.

Whenever intervention is at issue, there is, of course, the potential that addition of the new parties may create complications that adversely affect the just and prompt resolution of the matter. No such problems are evident to us in this case, however, and we think that they are unlikely to occur where, as here, intervention is sought by a taxing body. The goal of such taxing districts, after all, will normally be the same as that of the county collector, namely, to defend the assessment and argue against its reduction. Moreover, because the interests of the taxing districts will coincide with those of the county collector in most instances, it seems more likely that the legal and evidentiary resources they bring to bear will help rather than hinder the efforts of the State's Attorney in representing the county collector's position. This is not idle speculation on our part. It is supported by the county collector, herself, who candidly admitted in her brief that the reason the State's Attorney consented to the entry of appearance by counsel for the City and the Board of Education in the trial court in this case was because, among other reasons, she believed "there existed a reasonable expectation that the Intervenors' presence in the lawsuits would compliment rather than inhibit the ongoing efforts of the State's Attorney."

We note, moreover, that to the extent that the participation of intervenors may threaten to introduce complication or divisiveness into tax objection cases, section 2–408 of the Code of Civil Procedure (735 ILCS 5/2–408 (West 2002)) provides a complete solution.

Under subsection (f) of the statute, quoted earlier in the opinion, the court may impose a wide array of restrictions on what the intervening parties may do, including prohibiting them from raising new issues and barring them from interfering with the control of the litigation. 735 ILCS 5/2–408(f) (West 2002). As our summary of the proceedings below indicated, the county collector expressly invoked this provision in her submission to the circuit court and stated she would voice no objection to intervention by the City and the Board of Education if that intervention were subject to the restrictions permitted by subsection (f). Nothing in the appellate court's decision would preclude the circuit court from utilizing subsection (f)'s restrictions in fashioning an intervention order on remand as the county collector proposed.

As a practical matter, the only conflict likely to occur between the county collector and intervening taxing districts is if the State's Attorney, who represents the collector, believes that the dispute should be compromised for a lower amount than the intervenors would like. Again, however, the statutory scheme provides a complete solution. Under the law, the State's Attorney is the designated agent for negotiating compromise agreements with the taxpayers. The State's Attorney, not the taxing districts, will therefore have the final say. 35 ILCS 200/23–30 (West 2002). For all of these reasons, we reject the notion that allowing intervention by taxing districts is incompatible with the State's Attorney's constitutional and statutory authority.

The county collector asserts that our decision in *People ex rel. Devine v. Murphy*, 181 Ill. 2d 522 (1988), supports a contrary conclusion. We disagree. The issue in *Murphy* was whether section 23–15 of the Property Tax Code (35 ILCS 200/23–15 (West 2002)), which specifies, *inter alia*, that objections to assessments are to be heard by the circuit court *de novo*, violates the separation of powers provision of the Illinois Constitution (Ill. Const. 1970, art. II, §1) by vesting in the judiciary discretionary powers which properly belong to the executive branch of government. In rejecting that claim and upholding the statute, we affirmed the principle that a State's Attorney's compromise and settlement of a tax objection under section 23–30 of the Property Tax Code (35 ILCS 200/23–30 (West 2002)) cannot be impeached " 'on the grounds that a better result

should have been reached, or for any other reason short of fraud or bad faith.' " *People ex rel. Devine v. Murphy*, 181 Ill. 2d at 538, quoting *People ex rel. Thompson v. Anderson*, 119 Ill. App. 3d 932, 940 (1983).

Nothing in our decision today brings that proposition into question. As we have just discussed, allowing intervention by taxing districts in no way infringes on the authority conferred on State's Attorneys by section 23–30.

We turn then to the arguments against intervention advanced by Madison Two and the other remaining tax objectors in this case. Echoing the position of the county collector, they also contend that permitting intervention would be an impermissible infringement of the State's Attorney's constitutional and statutory powers. For the same reasons set forth above, that argument is untenable.

The tax objectors further argue that individual taxing districts have no legally cognizable interest in the outcome of challenges to assessment valuations and therefore lack standing to participate in tax objection cases. This argument is untenable as well. Taxing districts have a direct and immediate stake in how assessment challenges are decided, for if assessments are ultimately found to be excessive, the portion of the taxes attributable to the over assessment must be refunded, and the tax proceeds available to the taxing districts will necessarily be reduced. While some taxing districts may ultimately be able to make up for the shortfall in subsequent years by increasing their tax rates, the objectors concede that others, including the Chicago Board of Education, are subject to statutory rate limitations and the Property Tax Extension Limitation Law (35 ILCS 200/18–185 *et seq.* (West 2002)), which may limit such opportunities. Moreover, even where levies can be raised in the future, the fact remains that in the particular year in question, the tax revenues available to them will be lower than they otherwise would be.

That individual taxing districts have a legally cognizable interest in tax assessment proceedings was recognized by the General Assembly itself when it enacted the Property Tax Code. As we have described, the Property Tax Code confers on taxing districts the right to bring the initial challenge to an assessment in the board of review (35 ILCS 200/16–95, 16–115 (West 2002)), to appeal the board of review's decision to the Property Tax Appeal Board (35 ILCS

200/16–160 (West 2002); 86 Ill. Adm. Code §1910.10(c) (2007) (amended at 21 Ill. Reg. 3706, eff. March 6, 1997); 86 Ill. Adm. Code §1910.60(b) (2007) (amended at 31 Ill. Reg. 16222, eff. November 26, 2007)) and to intervene in a Property Tax Appeal Board appeal initiated by the taxpayer (86 Ill. Adm. Code §1910.60(d) (2007) (amended at 31 Ill. Reg. 16222, eff. November 26, 2007)). When they are willing to meet statutory prerequisites, taxing districts also have the same right as a property owner or any other person to initiate tax objection cases in the circuit court (35 ILCS 200/23–5, 23–10 (West 2002)), and when the requirements of section 2–404 of the Code of Civil Procedure (735 ILCS 5/2–404 (West 2002)) are satisfied, they may be joined as parties in tax objection proceedings initiated by others. 35 ILCS 200/23–15 (West 2002). The tax objectors' claim that taxing districts have no real interest the outcome of assessment proceedings is flatly inconsistent with these provisions. To accept it would therefore require our court to reject a determination that the legislature has already made and which it unquestionably had the right to make.

In an effort to avoid this problem, the tax objectors attempt to draw a contrast between the way intervention is handled in Board proceedings with the way it is dealt with in tax objection cases and to suggest, thereby, that the legislature's true intent was to prohibit intervention. Indeed, they go so far as to argue that under the present statutory scheme, the only proper parties to tax objection cases in Cook County are the particular taxpayers with an interest in the property and the State's Attorney, as representative of the county collector.

One can certainly see the practical advantages to such a system from the property owner's point of view. The probability is that the only other parties who might be interested in participating in the case will be entities such as taxing districts, whose interests will be adverse to the owners'. Fewer parties therefore means fewer adversaries and perhaps a correspondingly greater opportunity to persuade the circuit court that their assessments should be lowered. Under the law, however, the tax objectors' theory cannot be sustained.

An immediate obstacle to their construction of the law is section 23–15 of the Property Tax Code (35 ILCS 200/23–15 (West 2002)), the basic provision governing the procedures that must be followed in

-15-

tax objection cases. That statute specifically authorizes joinder of additional parties in accordance with section 2–404 of the Code of Civil Procedure (735 ILCS 5/2–404 (West 2002)), whose provisions this court has characterized as liberal. See *Carter v. Chicago & Illinois Midland Ry. Co.*, 119 Ill. 2d 296, 304 (1988). Because one must first pay the tax in order to file a tax objection complaint and then name the county collector as a defendant, the person who pays the tax and the State's Attorney will necessarily be involved in every case. If the tax objectors' theory were correct and those were the only parties who allowed to participate in the litigation, there would thus be no one left who would be el igible for joinder. If no one else can be joined, the liberal joinder provision in the statute would be rendered meaningless. Such a result would violate one of our most basic precepts of statutory interpretation, namely, that whenever possible courts must construe statutes so that no part is rendered a nullity. *Eads v. Heritage Enterprises, Inc.*, 204 Ill. 2d 92, 105 (2003).

The tax objectors' attempt to distinguish the legislature's treatment of the Property Tax Appeal Board appeals from tax objection cases is flawed for another reason as well. The Property Tax Code is *not* more definite with regard to intervention in Board appeals than it is in tax objection cases. Contrary to the tax objectors' arguments, the law handles intervention in an analogous fashion under both avenues of recourse. In Board appeals, just as in tax objection cases, there is no specific provision authorizing intervention by taxing districts. The right to intervention in Property Tax Appeal Board proceedings is found in the agency's administrative regulations governing the procedures to be followed in cases brought before it for decision. Likewise, the right to intervene in tax objection cases is found in the statutory provisions governing the procedures circuit courts must follow in cases brought before them for decision, namely, the Code of Civil Procedure (735 ILCS 5/1–101 *et seq.* (West 2002)). In each case it is the provisions governing the procedures to be followed in the particular tribunal, not the Property Tax Code itself, which fixes the terms for intervention. If the Property Tax Appeal Board's administrative rules may properly control intervention in Board appeals, it is difficult to see why the Code of Civil Procedure should not likewise control tax objection proceedings filed in circuit court. Indeed, to the extent that the Code of Civil Procedure was

promulgated by the legislature itself and not merely an administrative body, its efficacy in this regard would seem to be greater, not less.

The statutory provisions governing tax objection cases at issue in this case were enacted as part of the current Property Tax Code in 1994. When the General Assembly enacted that law, it did so against the background of an existing legislative scheme that included section 1–108(b) of the Code of Civil Procedure (735 ILCS 5/1–108(b) (West 2002)). That statute expressly provides that where proceedings are governed by some other statute, the other statute controls to the extent it regulates procedure, but that article II of the Code, also known as the Civil Practice Law (see 735 ILCS 5/1–101(b) (West 2002)), applies to matters of procedure not regulated by the other statute. 735 ILCS 5/1–108(b) (West 2002). In light of this law, we must presume that when the General Assembly enacted the tax objection provisions of the Property Tax Code without including a particular provision addressed to intervention in circuit court, it intended the matter to be governed by the intervention provisions set forth in article II of the Code of Civil Procedure. To our knowledge, no published decision in this state has taken a contrary view. Even the dissenting justice in the case before us did not question it. In suggesting that we should construe the law as evincing an intention by the General Assembly to bar intervention, the tax objectors have thus gotten things exactly backward.

Faced with the weight of authority supporting the conclusion that the law does authorize taxing districts to intervene in tax objection cases, the tax objectors in this case advance one final argument. They propose that we construe the governing provisions as permitting intervention only in cases involving objections to the tax levy or rate, and not in cases where, as here, the objection is to the amount of the assessed valuation. This we cannot do. The procedures set forth in the Property Tax Code regulating tax objections in the circuit court govern whenever "any person desires to object to all or any part of a property tax for any year, *for any reason*" (emphasis added) (35 ILCS 200/23–5 (West 2002)) and apply, without limitation, to objections to taxes, levies *or* assessments (35 ILCS 200/23–15 (West 2002)). The only type of objections subject to special limitations are: (1) those claiming the property is exempt from taxation (see 35 ILCS 200/23–5, 23–25 (West 2002)) or (2) those based on "the forms of any budget

or appropriation ordinance, or the degree of itemization or classification of items therein, or the reasonableness of any amount budgeted or appropriated thereby" (35 ILCS 200/23–35 (West 2002)). The objections at issue here do not fall within either of these two categories. It is not within our power to declare the existence of any additional exceptions, for a court may not add provisions that are not found in a statute, nor may it depart from a statute's plain language by reading into the law exceptions, limitations, or conditions that the legislature did not express. *People v. Lewis*, 223 Ill. 2d 393, 402 (2006).

For the foregoing reasons, the circuit court erred when it held that taxing districts have no right to petition for leave to intervene in real estate tax objection cases filed by taxpayers in the circuit court of Cook County pursuant to the Property Tax Code (35 ILCS 200/1–1 *et seq.* (West 2002)). Accordingly, its orders denying the petitions for leave to intervene filed by the City and the Board of Education were properly reversed by the appellate court. Because the circuit court ruled as a matter of law and did not reach the question of whether the requirements for intervention under section 2–408 of the Code of Civil Procedure (735 ILCS 5/2–408 (West 2002)) would otherwise have been satisfied under the particular facts of these cases, the appellate court also acted properly when it remanded the causes to the circuit court for a hearing on the intervention petitions. The judgment of the appellate court is therefore affirmed.

*Affirmed.*

JUSTICE BURKE took no part in the consideration or decision of this case.

JUSTICE KILBRIDE, dissenting:

I respectfully dissent from the majority opinion on the merits of the intervention issue. I write separately for two reasons. First, I agree in general with the majority that the Code of Civil Procedure, rather than the Property Tax Code, applies to intervention petitions in real estate tax objection cases, but for different reasons. Second, I would affirm the circuit court's order denying the petitions to intervene

because petitioners have failed to state a basis for intervention under section 2–408 of the Code of Civil Procedure (735 ILCS 5/2–408 (West 2002)).

Unlike the majority, I find no support for intervention in the Property Tax Code. The majority states: "the Property Tax Code permits additional parties to participate in tax objection proceedings in circuit court. They may do so through either joinder or intervention." Slip op. at 4. To the contrary, section 23–15 of the Property Tax Code (35 ILCS 200/23–15 (West 2002)) only references "[j]oinder of plaintiffs." Joinder of plaintiffs and intervention are two distinct procedural mechanisms. See 735 ILCS 5/2–204, 2–208 (West 2002). The Property Tax Code does not refer to intervention. I therefore disagree with the majority's statement that the Property Tax Code permits intervention.

Nevertheless, section 1–108(b) of the Code of Civil Procedure provides the answer:

> "In proceedings in which the procedure is regulated by statutes other than those contained in this Act, such other statutes control to the extent to which they regulate procedure but *Article II of this Act applies to matters of procedure not regulated by such other statutes.*" (Emphasis added.) 735 ILCS 5/1–108(b) (West 2002).

Accordingly, absent a regulatory procedure in the Property Tax Code, section 1–108(b) of the Code of Civil Procedure triggers section 2–408 of the Code of Civil Procedure on intervention in real estate tax objection cases.

Despite section 2–408's application in real estate tax objection cases, I disagree with the majority that the denial of the petitions to intervene must be reversed and the cause remanded with directions to hold a hearing on the intervention petitions under section 2–408 (735 ILCS 5/2–408 (West 2002)). The record in this case shows that the parties and the petitioners filed exhaustive briefs addressing the adequacy of the petitions to intervene in the circuit court. During the hearing on the petitions to intervene, the circuit court indicated any decision on whether the petitions adequately plead facts to intervene would be determined on the pleadings and briefs if the court's ruling should ultimately be reversed. No additional hearing on this issue was

contemplated. None of the parties voiced objections or asked to be heard on the issue. Moreover, the issue has been fully briefed before this court. Therefore, I see no reason this court should not address the issue, particularly since this court may affirm the circuit court's judgment on any basis contained in the record. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995) ("As a reviewing court, we can sustain the decision of a lower court on any grounds which are called for by the record, regardless of whether the lower court relied on those grounds and regardless of whether the lower court's reasoning was correct").

In my view, the petitions to intervene do not adequately allege a basis for intervention under section 2–408(a). Section 2–408(a) of the Code of Civil Procedure states:

> "Intervention. (a) Upon timely application anyone shall be permitted as of right to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court or a court officer." 735 ILCS 5/2–408(a) (West 2002).

First, section 2–408(a)(1) is inapplicable here because no statute confers an unconditional right to intervene in real estate tax objection cases. Next, to state a basis for intervention under section 2–408(a)(2), petitioners were required to allege specific facts demonstrating that the State's Attorney's representation is or may be inadequate and to allege specific facts showing that the petitioners will or may be bound by an order or judgment in the real estate tax objection case. The petitions allege that "[t]he State's Attorney's Office devotes 17 to 18 assistant [S]tate's [A]ttorneys to its Real Estate Tax Division," and that "[o]n average, each assistant must handle over 300 specific objection cases in addition to their share of the tax appeals filed before the Property Tax Appeal Board and in addition to their other civil property tax caseload." The petitions also allege that "[t]he sheer volume of the State's Attorney's caseload" combined with "the magnitude of the property tax refunds during the

past two years ($382.0 million) and the magnitude of the Petitioners' interest (70% of every refunded tax dollar) leads inexorably to the conclusion that the State's Attorney's representation of the Petitioners' interest in this matter is *or may be* inadequate." (Emphasis in original.) The petitioners' allegations of attorney caseload are insufficient to support grounds for intervention under section 2–409(2). Allegations of attorney caseload do not "lead inexorably to the conclusion" that the State's Attorney's representation in this case will or may be inadequate. On their face, the petitions are legally insufficient to meet the intervention requirements of section 2–408(a)(2).

The petitions further allege mere conclusions that "[o]n information and belief, the State's Attorney's Office lacks the financial resources to obtain appraisal reports in defense of the current assessment on all but a small percentage of tax objection complaints filed each year." The petitions do not allege specific facts to support this contention.

In fact, in its response to the petitions to intervene, the Cook County State's Attorney, on behalf of the county collector, denied each allegation offered by the petitioners in support of the petition to intervene "insofar as those allegations aver that the State's Attorney lacks the requisite resources, both in terms of professional staffing and evidentiary appraisal resources, to conduct the adequate representation of the several defendant interests in this case." Without more, petitioners only offered conclusory allegations. Petitioners have, therefore, failed to state a basis for intervention under section 2–408(a)(2) of the Code of Civil Procedure.

The petitions also do not sufficiently allege a basis for intervention under section 2–408(a)(3) of the Code of Civil Procedure. Under subsection (a)(3), petitioners were required to allege specific facts showing that they are "so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court." 735 ILCS 5/2–408(a)(3) (West 2002).

The petitions allege a portion of petitioners' revenue is generated from real estate taxes collected by the Cook County treasurer and that refunds of property tax revenues are paid by the county treasurer from a taxing district's current collections. To the extent the subject

properties' assessed values are reduced, petitioners allege they "will suffer a combined direct revenue loss of $.70 for every dollar refunded to the property owner[s]." Any such loss "directly reduces the revenue that is available to the City to provide City services" and "reduces the programs and educational opportunities the Board of Education is able to offer the children of the City of Chicago." The petitions conclude, "[t]he petitioners are so situated as to be adversely affected by any settlement or trial of this action that calls for any reduction in the assessed value of the subject property."

Those allegations are insufficient to satisfy the subsection (a)(3) requirements. If the circuit court ultimately determines that the plaintiffs' properties are overassessed, it may direct the county collector to distribute a refund to plaintiffs, and any refund "shall be made *** from the next funds collected after entry of the final order until full payment of the refund and interest thereon has been made." 35 ILCS 200/23–20 (West 2002). Although the circuit court potentially could require the tax collector to use future funds collected, it does not provide a sufficient basis to demonstrate that petitioners will be adversely affected. Taxing district revenue is not derived from assessments, but from levies and the corresponding rates. See *People ex rel. Ingram v. Wasson Coal Co.*, 403 Ill. 30, 36 (1949) (the amount of tax extended upon any assessment is not determined by the amount of the assessment, but by the demands of the local taxing authorities). A refund suit, after the tax payment and distribution, avoids injunctions against collection and disruption to taxing district revenues while the taxpayers' claims are litigated. See *Clarendon Associates v. Korzen,* 56 Ill. 2d 101, 108 (1973). Thus, the petitions fail to allege specific facts pursuant to section 2–408(a)(3), indicating how petitioners are so situated as to be adversely affected by a distribution or other disposition of property in the custody, or subject to the control or disposition, of the court or a court officer.

Additionally, petitioners have failed to present any petition or motion, as required by section 2–408(e). Section 2–408(e) requires a petition for intervention be accompanied by the initial pleading or motion for proposed filing. See 735 ILCS 5/2–408(e) (West 2002). Here, petitioners filed a "response" to each assessment objection complaint and an accompanying brief seeking increased assessments. The Property Tax Code does not provide for petitioners seeking to

intervene to file a response or to request an assessment increase. Accordingly, petitioners have not complied with section 2–408(e).

For the foregoing reasons, I would affirm the circuit court's order denying the petitions to intervene. I therefore respectfully dissent.