2015 IL App (3d) 140034

Opinion filed October 22, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| TAXPAYERS:  101 E. CROSSROADS, LLC; 1101 TAYLOR ROAD, LLC; 135TH ST PLFD RETAIL DEV II; 18500 NORTH CREEK DRIVE LLC; 18520 81ST TP LLC; 3 D FRANKFORT LLC; 3150 TONTI DRIVE JOLIET, LLC; 600 TERRITORIAL LLC; 6973 AZ ROMEOVILLE LLC; 775 CROSSROADS PARKWAY, LLC; ADVENTIST BOLINGBROOK HOSPITAL; AEI ACCREDITED INV FUND VI LP; AFFILIATED REALTY & MANAGEMENT COMPANY; AGD INVESTMENTS LLC-PLAINFIELD; MARIO A. ALLEGRO; AMB INSTITUTIONAL ALLIANCE; AMB PROPERTY II LP; AMERICAN MULTI-CINEMA, INC.; AMERICAN TECH PUBLISHERS INC.; AMLI - PRESERVE AT RIVER RUN LP; ANDERSON COOPER & BRASS CO.; ASHLEY FURNITURE IND; ATG TRUST CO. TR 84-116; AUTOZONE, INC.; BANK OF AMERICA 2; BBPVILLC/ HARLEM FURNITURE; BELL TOWER PLAZA, LLC; ROBERT BETTINARDI; BIMBA MANUFACTURING CO.; BLOCK INDUSTRIAL CNTR I; BLUE STONE COMMONS LLC; BLUFF POINT, LLC; BOLINGBROOK MENARDS PLAZA; BOLINGBROOK PARTNERS, LLC; BOLINGBROOK PLAZA; BOLINGBROOK SPE I LLC; BPG PROPERTIES, LTD.; BUILDERS LEASING CORP.; BURNHAM MANAGEMENT - EVERGREEN TERRACE II; ELLEN CALDERONE TRUST; CAPUTO'S | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Appeal No. 3-14-0034<br>Circuit No. 11-TX-340<br><br><br><br><br><br><br><br><br><br><br><br>Honorable Barbara N. Petrungaro, Judge, Presiding. |

FRESH MARKETS; CARLOW NORTH LLC; )
CATALYST PORTFOLIO I, LLC; )
CATELLUS DEVELOPMENT CO.; )
CATELLUS FINANCE I, LLC; CATELLUS )
OPERATING LTD. P.; CBOCS WEST, INC.; )
CCOM 13 LLC; CENTERPOINT JOLIET )
TERMINAL; CENTERPOINT PROPERTIES )
TR.; CENTERPOINT WOODRIDGE, LLC; )
CENTURY SUPPLY CO.; CF CAPITAL, )
LLC; CF LLC; CHARM III, LLC; JAMES )
CHARNAS, JR.; CHERRY HILL 4, LLC & )
CHER; CHERRY HILL EIGHT, LLC; )
CHERRY HILL JB LLC; CHERRY HILL )
NINE, LLC; CHERRY HILL SIX, LLC; )
CHERRY HILL VENTURE LLC; CHICAGO )
BOXED BEEF; CHICAGO SUITES, LLC; )
CITGO PETROLEUM CORPORATION (PDV )
Midwest Refining); COLLISION )
CENTERS OF AMERICA; COLUMBIA )
ILLINOIS MCDONOUGH; )
COMMONWEALTH EDISON CO. )
(Channahon Township); COMMON- )
WEALTH EDISON CO. (Crete )
Township); COMMONWEALTH EDISON )
CO. (Custer Township); )
COMMONWEALTH EDISON CO. (Du Page )
Township); COMMONWEALTH EDISON )
CO. (Florence Township); COMMON- )
WEALTH EDISON CO. (Frankfort )
Township); COMMONWEALTH EDISON )
CO.(Green Garden Township); )
COMMONWEALTH EDISON CO. (Homer )
Township); COMMONWEALTH EDISON )
CO. (Jackson Township); COMMON- )
WEALTH EDISON CO. (Joliet )
Township); COMMONWEALTH EDISON )
CO. (Lockport Township); COMMON- )
WEALTH EDISON CO. (Manhattan )
Township); COMMONWEALTH EDISON )
CO. (Monee Township); COMMON- )
WEALTH EDISON CO. (New Lenox )
Township); COMMONWEALTH EDISON )
CO. (Peotone Township); COMMON- )
WEALTH EDISON CO. (Plainfield )
Township); COMMONWEALTH EDISON )

2

CO. (Reed Township); COMMON- )
WEALTH EDISON CO. (Troy )
Township); COMMONWEALTH EDISON )
CO. (Washington Township); )
COMMONWEALTH EDISON CO. (Wesley )
& Wilmington Townships); COMMON- )
WEALTH EDISON CO. (Wheatland )
Township); COMMONWEALTH EDISON )
CO. (Will Township); COMMON- )
WEALTH EDISON CO. (Wilton )
Township); CREEKSIDE; CREST HILL )
LAND DEVELOP LLC; CROSSROADS )
BUSINESS PARK; CROSSROADS LAKES )
LLC; CVS CORP (Madigan); CVS )
PHARMACY; DAHN; DEERBROOK )
NURSING CENTER; SAWAANJIT )
DHILLON; DHM BOLINGBROOK LLC )
REAL EST; CHARLES DINOLFO; DOLLAR )
TREE DISTRIBUTION, INC.; DREW J. )
MICHAEL SCOTT/CASS LLC; ROGER )
DUBA; DUGAN FINANCING LLC; DUKE )
CONSTRUCTION LP; DUKE REALTY LP; )
EASY LIVING PROPERTIES LLC: EC )
REALTY LLC.; EDCO, INC.; EDWARD )
HEALTH VENTURES; THEODORE & )
DIANNE L. ELLIS; ESS VRS OWNER LLC/ )
SUSAQ; EVERGREEN TERRACE 1 )
(Burnham Mgnt.); EXTRA SPACE )
#1108; EXTRA SPACE OF NAPERVILLE, )
LLC; EXXON MOBIL OIL; FC JANES )
PARK, LLC; FIRST AMERICAN BANK; FJ )
BUILDING LLC; FORECOM CHALLENGER, )
INC.; FOREST CITY BOLINGBROOK, LLC; )
FRANKFORT COMMONS II; FRANKFORT )
CROSSINGS LTD.; ROBERT GARBER; )
GATOR LOCKPORT, LLC; GE CAPITAL )
FRANCHISE FIN CORP; GOLF VISTA EST, )
LLC; GRANITE FRANKFORT TERRACE )
LLC; GRANITE JOLIET TERRACE LLC; )
GREENLEAF LIMITED PARTNERSHIP; )
HAMILTON PARTNERS; HAMPTON )
MERCURY INV CL, LLC; HARBOR TOOLS )
BUILDING LLC; HARLEM 193RD ST. )
PLAZA; HARRIS NA (Madigan); HARTZ )
CONSTRUCTION CO., INC.; HSREP II )

3

STORAGE LLC; HTW, LLC; INDUSTRIAL )
PROP VUND VI, LLC; INTERNATL UNION )
OPERATING ENG; JAIN GROUP, LLC; )
JAMES CAMPBELL COMPANY, LLC; )
JEFFERSON JOLIET PLAZA; JES )
BOLINGBROOK, LLC; JOLIET EXT )
LODGING ASSOC LLC; JOLIET JOINT )
VENTURE, LLC; JOLIET JOINT VENTURE, )
LLC 2; JOLIET-80 LODGING PTR; JOLIET/ )
55 LODGING ASSOC.; JOYCE JOLIET )
PLAZA; JUDD PROPERTIES JUDD MARK )
MARY; JAMES S. KAHRIMAN; WILLIAM )
EDWARD KARABEL; KASSULAT, )
RICHARD A. TR. 11047610; KEEPSAFE- )
PUBLIC SOTRAGE LLC; ARTHUR & )
JOANNE KETSIOS; KLY 460 GIBRALTER; )
KRENZIEN, TIMOTHY J., REVOC; KRG )
NAPERVILLE, LLC; LAFARGE NORTH )
AMERICA; BRIAN D. LAGIGLIA; )
LAGIGLIA BRIAN DONNA B. TR 1-6932; )
LAGIGLIA, DANIEL C/O BRIAN )
LAGIGLIA; LAKEWOOD NURSING HOME; )
LANDQUEST OF PLAINFIELD; LARKIN )
VILLAGE LP; LARKINS ASSOCIATES LP; )
LIFE STORAGE CENTERS, LLC; LOCK- )
PORT 199 LLC; LPF 740 ROMEOVILLE, )
LLC; MARK B. & COLLEEN A. LUBIENSKI; )
LUCKY DEVELOPMENT LLC; THOMAS )
ANU - ZACHARIAS MANOJ; MARATHON )
OIL CO.; MARMON KEYSTONE CORP.; )
MARQUETTE NATIONAL BANK; )
MARQUETTE NATL BANK TR 13295; )
RICHARD J. MC CANN; MEIJER STORES; )
JOSEPH MIRANTE; MIT SECURED L.P.; )
MIT UNSECURED L.P.; ML REALTY )
PARTNERS LLC; MLRP 1319 MARQUETTE, )
LLC; MLRP KOPPERUD PHASE II LLC; )
MOKENA CROSSINGS I, LLC; MOKENA )
CROSSINGS OFFICE, LLC; MOKENA )
RETAIL ASSOCIATION LLC; METRO )
CHICAGO INDUSTRIAL ACQUISITION )
CORP.; NAPERVILLE RT. 59/95TH PLAZA; )
NLSC LLC; NOONAN LTD. PARTNERSHIP; )
NORTH STATE TRUST COMPANY; )
NORTHERN BUILDERS INC.; MICHELLE )

4

OBRECHT; OC INVESTMENTS, LLC; OHIO )
STATE TEACHERS RETIREMENT; )
OXFORD BANK & TRUST; PACTIV )
CORPORATION (CBIZ); PALOS BANK & )
TRUST CO. TR 1-7031; PALOS BANK & )
TRUST CO. TR 1-6946; ARTHUR G. PARHAS)
TRUST; REDDY PARVATHAREDDY; )
PEACOCK ENGINEERING COMPANY; )
ORLANDO PELLEGRINO; PEOPLES )
ENERGY RESOURCE; PF 1 WINDHAM )
LLC;  PINE MEADOWS APARTMENTS TR )
9406; PINE RIDGE APARTMENTS; PLAIN- )
FIELD PLAZA; PLAINFIELD PLAZA III; )
PROLOGIS ILLINOIS LLC; PROLOGIS TLF )
(CHGO) LLC; PUBLIC STORAGE, INC.; )
PULASKI PLACE, LLC; PROLOGIS; )
PROLOGIS DEVELOPMENT SERV; )
MOHAMMAD QUADEER; RDK )
VENTURES, LLC; REDWOOD CREST HILL )
LLC; REGENCY CENTERS LP; RREEF )
AMERICAN REIT II; RYAN COMPANIES )
US, INC.; SA CHALLENGER, INC.; )
SAMMONS COURT LLC; SHARP )
ELECTRONICS CORPORATION; )
SHURGARD IL PROPERTIES, INC. #8060; )
DAN SICKAFOOSE; SIMON PROPERTY )
GROUP (North Ridge Plaza); SOUTH )
SUBURBAN HOSPITAL (Advocate )
Health Care); SOUTHWEST SURGERY )
CENTER, LLC: SS BOLINGBROOK LLC )
#502; KAREN STREIT; TARGET CORP. )
T-1403: TARGET CORP. T-2028; TARGET )
CORP. T-2035; TARGET CORPORATION )
T-1881; TARGET CORPORATION T-0867; )
TARGET CORPORATION T-0894; TARGET )
STORE T-2293; TARGET STORE T-2521; )
TARGET T-2710; TCB 8550 LLC; TDC )
NAPERVILLE LLC - TUCKER )
DEVELOPMENT CORP.; TEACHERS )
INSURANCE & ANNUITY ASSOCIATION )
(NY); TETTEN-GIKUNOO KWASI )
GIKUNOO ELIZABETH; THE ALTER )
GROUP; THORNTONS, INC.; THORNWOOD)
HOUSE (Metroplex, Inc. #1414); )
TINLEY HARLEM PLAZA; TOM KELLY'S )

5

CHOPHOUSE PUB LLC; TR 1000 DALTON )
LANE CORP.; U-STORE IT #615 )
PLAINFIELD; U-STORE IT #675; U.S. BANK )
NATIONAL ASSOCIATION; US BANK NA; )
V3 CMJ LLC - ASHFORD PLACE; V3 )
RIVER HILLS LLC; VACANT LAND )
CHERRY HILL H; VANDEN ORLAND, LLC; )
VELUCHAMY PETHINAIDU TR 3730; )
VICTORY ASSOC LP TR 123135-08; VIP )
MDG DOWNERS GROVE, LLC; VIP )
MOKENA CROSSINGS LLC; VIP )
REMINGTON LAKES, LLC: VIP )
ROMEOVILLE II, LLC; VIP ROMEOVILLE, )
LLC; VIP TINLEY PARK LLC; WAL-MART )
STORES, INC.; MARTIN F. & NANCY R. )
WARD; WAS BOLINGBROOK II LLC; )
THOMAS & LISA WEDOFF; WEST )
SUBURBAN BANK; WHITE PINE LUMBER; )
WILLIAMS ROBERT B TR 10201101; )
WILLOW RUN, LLC; MR. & MRS. TOM )
WOLSKI; WOODCREEK, LLC; YSI III LLC )
#609, )
                        )
      Plaintiffs-Appellants, )
                        )
      v. )
                        )
STEVE WEBER, Will County Treasurer and )
Ex-Officio Will County Collector, )
                        )
      Defendant )
                        )
(Homer Community Consolidated School )
District No. 33-C; School District No. 92; )
Lockport Township High School District )
No. 205; Laraway Community Consolidated )
School District No. 70-C; Frankfort )
Community Consolidated School District )
No. 157-C; and Lincoln-Way Community )
High School District No. 210, )
                        )
      Intervenors and Petitioners-Appellees). )

      JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
      Justice Holdridge concurred in the judgment and opinion.

Justice Carter dissented, with opinion.

**OPINION**

¶ 1    Taxpayers filed tax objections for the 2010 tax year. Taxpayers and the Will County State's Attorney entered into a settlement agreement, which the court entered as an order on May 2, 2013. Subsequently, on October 4, 2013, more than five months later, numerous school districts (School Districts) filed motions to intervene and motions to vacate the settlement agreement. After hearing oral arguments, but without conducting an evidentiary hearing, the court granted the School Districts motion to vacate the settlement agreement.

¶ 2    Taxpayers appeal, arguing that the trial court erred in vacating the settlement agreement. Specifically, Taxpayers argue that the State's Attorney had the sole authority to compromise a tax objection complaint; the compromise agreement is a valid, binding contract; the School Districts failed to file valid section 2-1401 petitions; and the county's voluntary payment rendered the issue moot. For the following reasons, we reverse.

¶ 3                                BACKGROUND

¶ 4    Taxpayers filed a tax rate objection for the 2010 tax year. Despite a statutory notice requirement that required the county clerk to provide notice of the filing of the complaint to the taxing bodies (see 35 ILCS 200/23-10 (West 2010)), the clerk failed to provide notice of the tax objections to the School Districts.

¶ 5    The State's Attorney represented the county and the taxing bodies pursuant to section 23-30 of the Property Tax Code (35 ILCS 200/23-30 (West 2010)). After several months of negotiation, the State's Attorney and Taxpayers entered into a settlement agreement (the first agreement) resolving some of the Taxpayers' claims. The trial court approved the settlement.

7

That settlement agreement did not affect the School Districts; thus, it is not at issue in this appeal. The State's Attorney and Taxpayers continued negotiating in an attempt to resolve the remaining claims. On May 2, 2013, the court held a status hearing at which the parties presented the court with a settlement agreement. The court approved the settlement and entered an order reflecting the same.

¶ 6       In October 2013, five months after the Taxpayers and the State's Attorney entered into the second agreement, the School Districts became aware of the tax objections and filed petitions to intervene and motions to vacate the settlement agreement. In their motions to vacate, the School Districts argued that the clerk failed to provide them notice and that the State's Attorney did not adequately represent the School Districts; the State's Attorney used incorrect numbers in conducting the settlement negotiations. The court granted the School Districts' motions to intervene and treated the motions to vacate as petitions for relief of judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2012)).

¶ 7       The court heard oral arguments pursuant to the motions to vacate. The parties agreed that the settlement agreement was not a product of fraud or bad faith. The court stated, "I am not suggesting that anybody acted in bad faith. I don't think that there is any evidence to say that there was bad faith from anyone ***." Without being sworn, the State's Attorney stated that he utilized the wrong figures in computing the settlement agreement. However, at the time he thought he was applying the correct numbers; he used the numbers on file with the county clerk. The court heard no testimony from witnesses nor collected any evidence.

¶ 8       Ultimately, the court found that the School Districts satisfied the requirements under section 2-1401 and granted the motions to vacate the settlement agreement.

8

¶ 9        Taxpayers appeal.  We reverse.

¶ 10                                  ANALYSIS

¶ 11       Taxpayers argue that the trial court erred in vacating the settlement agreement; the court does not have authority to vacate a settlement agreement on the grounds that a better result could have been reached.  The School Districts argue that the court did not err in granting their motion to vacate; the School Districts did not infringe on the State's Attorney's authority to settle a tax objection.

¶ 12       Before we address the merits of the parties' arguments, we must first determine the appropriate standard of review.  The Taxpayers rely on our supreme court's decision in *People v. Vincent*, 226 Ill. 2d 1, 18 (2007), to support their position that we should apply a *de novo* standard of review on appeal; the trial court ruled on the section 2-1401 petitions to vacate without first conducting an evidentiary hearing.  The School Districts argue that we should apply an abuse of standard of review in this case.  *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 95 (2006).

¶ 13       We agree with the Taxpayers that the standard of review cited by the supreme court in its more recent decision in *Vincent* is controlling in this case.  In *Vincent*, our supreme court stated that a *de novo* standard of review applies on appeal in a case where the trial court granted a section 2-1401 petition without an evidentiary hearing.  *Vincent*, 226 Ill. 2d at 18.  In *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, our supreme court further clarified its holding in *Vincent*.  Our supreme court stated that "*Vincent* represents a specific niche of section 2-1401 petitions, those presenting a purely legal claim challenging a final judgment or order as void."  *Id.* ¶ 49.  On the other hand, the court held that a reviewing

9

court should apply an abuse of discretion standard of review where "a section 2-1401 petition presented a fact-dependent challenge to a final judgment or order." *Id.* ¶ 50.

¶ 14   Here, we are concerned with a motion to vacate that raised a legal claim; the School Districts requested that the court declare the settlement agreement void. They alleged that the attorney provided inadequate representation and the clerk failed to provide them notice of the tax objections. The court did not hear any testimony or consider evidence; it simply heard oral arguments on the motion. Ergo, we apply a *de novo* standard of review.

¶ 15   We now turn to the merits of the arguments. We find that that the School Districts did not establish grounds to vacate the settlement agreement. The State's Attorney is designated as the sole agent or representative for all of the taxing bodies in the court proceedings, at least initially, for the purpose of reaching a settlement with the tax objectors. 35 ILCS 200/23-30 (West 2012); *People ex rel. Devine v. Murphy*, 181 Ill. 2d 522, 538 (1998); *Madison Two Associates v. Pappas*, 227 Ill. 2d 474, 487-90 (2008); *People ex rel. Thompson v. Anderson*, 119 Ill. App. 3d 932, 937-39 (1983). Broad discretion is given to the State's Attorney when settling a tax objection case; the State's Attorney is not required to notify the taxing bodies of a proposed settlement agreement, or to seek their approval and has the final say in the settlement negotiations with the taxpayers. *Id.* at 938. In addition, the State's Attorney's settlement of a property tax objection case cannot be impeached by the taxing bodies " 'on the grounds that a better result should have been reached, or for any other reason short of fraud or bad faith.' " *Devine*, 181 Ill. 2d at 538 (quoting *Thompson*, 119 Ill. App. 3d at 940).

¶ 16   Yet, that is exactly what happened here. The School Districts did not allege fraud or bad faith. In fact, they concede that the settlement agreement was not a product of bad faith or fraud. Moreover, the court explicitly found that no evidence established bad faith. Instead, the School

10

Districts alleged the State's Attorney used incorrect figures when computing the *Miller* formula. *Central Illinois Public Service Co. v. Miller*, 42 Ill. 2d 542, 543-44 (1969). In essence, the State's Attorney stated "I made a mistake" and the court found that sufficient to vacate the settlement. That is legally insufficient to impeach the State's Attorney's settlement. *Devine*, 181 Ill. 2d at 538.

¶ 17        The School Districts argue that the court had to consider whether the State's Attorney adequately represented the public interest in reaching the settlement agreement. The trial court's role in the settlement proceedings in a real property tax objection case is very limited. *Id.* Our supreme court, in *dicta*, stated that the trial court has the responsibility of ensuring that the settlement agreement is not a product of fraud or bad faith and that counsel provided adequate representation. *Id.* Moreover, the court is not to judge the merits of the agreement. *Id.* at 538-39.

¶ 18        We are past the stage where the trial court determined whether or not to approve the settlement agreement. Here, the trial court already approved the settlement agreement, which means the court must have found that the State's Attorney provided adequate representation. Instead, we are determining whether the trial court erred in vacating the settlement agreement. Our supreme court never held that inadequate representation is grounds for vacating the settlement agreement. A settlement agreement is a contract. Parties enter into agreements only after careful negotiations. *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971). The parties agreed to the precise terms listed in the agreement. *Id.* An agreement is a compromise: "in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation." *Id.* at 681. The School Districts failed to plead or prove grounds to vacate the settlement.

11

¶ 19        Assuming, *arguendo*, that the court could vacate the State's Attorney's settlement agreement based on inadequate representation, we would find that there is no evidence that the State's Attorney provided inadequate representation while negotiating the settlement agreement. Even if we would take unsworn statements by the assistant State's Attorney as evidence, School Districts fail to explain how using the alleged wrong numbers (this allegation was never proven below) equates to inadequate representation. The State's Attorney might have failed to provide perfect representation, but adequate representation does not mean perfect representation. It means the taxing bodies feel " 'a better result should have been reached.' " *Devine*, 181 Ill. 2d at 538 (quoting *Thompson*, 119 Ill. App. 3d at 940).

¶ 20        During arguments on the motions to vacate, the State's Attorney said that he looked at the numbers on file with the county clerk as he does when defending any governmental unit. The Taxpayers used the same numbers in the complaint as what the county clerk had on file. In addition, the State's Attorney indicated that when he entered into the settlement agreement, he thought he applied the right numbers. However, there is no factual basis to support this as the court did not hold an evidentiary hearing, or swear in the State's Attorney before he explained the numbers he used.

¶ 21        Had the Taxpayers received a less than optimum deal due to their attorney's use of the wrong numbers, would they be allowed to bring a section 2-1401 petition to vacate the settlement agreement? We think not.

¶ 22        We note that even if we applied an abuse of discretion standard of review, the outcome would be the same. Under an abuse of discretion standard of review, we will reverse the decision of the trial court only where the court's ruling was arbitrary or unreasonable, ignored principles of law or if no other reasonable person would agree with the court's position. *Schmitz*

12

*v. Binette*, 368 Ill. App. 3d 447, 452 (2006). Here, the court abused its discretion by applying the wrong law. A court may vacate the settlement agreement only on the grounds of fraud or bad faith. Here, the School Districts did not establish either ground. *Devine*, 181 Ill. 2d at 538. In fact, the parties and the trial court agreed that the settlement agreement was not a product of fraud or bad faith. The School Districts simply alleged and argued that a better outcome could have been reached had the State's Attorney used different figures.

¶ 23    We accordingly find that the trial court erred in vacating the settlement agreement where the School Districts failed to even allege, let alone prove, sufficient grounds to vacate.

¶ 24    We reverse the trial court's order vacating the settlement agreement. In light of our ruling, we need not address Taxpayers' other arguments.

¶ 25                                    CONCLUSION

¶ 26    For the foregoing reasons, the judgment of the circuit court of Will County is reversed.

¶ 27    Reversed.

¶ 28    JUSTICE CARTER, dissenting.

¶ 29    I respectfully dissent from the majority's decision in the present case. I would find that the School Districts alleged and proved sufficient grounds to vacate the settlement agreement and would, therefore, affirm the trial court's judgment.

¶ 30    In my opinion, the record shows that the School Districts satisfied the statutory requirements for relief under section 2-1401 and established that they had a meritorious defense and that they had exercised due diligence. See 735 ILCS 5/2-1401 (West 2012); *Warren County*, 2015 IL 117783, ¶ 51; *In re Haley D.*, 2011 IL 110886, ¶ 58. Regarding the meritorious-defense requirement, the School Districts established that the State's Attorney, the statutorily designated

13

representative for the taxing bodies, had provided inadequate representation in the underlying proceedings by unknowingly using the wrong numbers in determining whether the tax levies were potentially excessive for the purpose of conducting his settlement negotiations. The numbers that were used substantially overstated the total amounts that were available in the challenged funds for the fiscal year. In fact, at the hearing on the section 2-1401 petition in this case, the State's Attorney who negotiated the second settlement agreement did not object to the School Districts' section 2-1401 petition and acknowledged in hindsight that different figures should have been used in conducting the settlement calculations. Thus, contrary to the majority, I would find that the School Districts' allegations in this case were more than just an effort to obtain a better result in the proceeding, but rather, were truly a claim of inadequate representation and that such a claim was a sufficient basis for vacating the settlement agreement. See *Devine*, 181 Ill. 2d at 539.

¶ 31     As for the due diligence requirement of section 2-1401, I believe that the School Districts satisfied that requirement as well. There is no dispute in this case that the School Districts were never notified by the county clerk that a property tax objection complaint had been filed; nor is there any dispute that the School Districts did not become aware of the tax objection complaint and of the settlement agreement until almost two years after the complaint had been filed and several months after the settlement agreement had been reached. The School Districts filed their section 2-1401 petition to vacate shortly thereafter.

¶ 32     Because I believe that the School Districts satisfied the requirements necessary for relief under section 2-1401, I dissent from the majority's decision in this case, which reaches the opposite conclusion. I would affirm the trial court's judgment, granting the School Districts' petition to vacate the settlement agreement.

14